640 So.2d 718 (1994)
David HOLCOMB et ux, Plaintiffs-Appellees,
v.
UNIVERSAL INSURANCE COMPANY, Defendant-Appellant.
No. 93-1424.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
Samuel Harold Craven, Alexandria, for David Holcomb et ux.
John David Ziober, Baton Rouge, for Universal Ins. Co.
Before GUIDRY, C.J., and YELVERTON and WOODARD, JJ.
GUIDRY, Chief Judge.
Defendant, Universal Insurance Company, a foreign insurance company domiciled in Fort Smith, Arkansas, appeals a judgment of the trial court applying Louisiana law to *719 interpretation of an automobile insurance policy issued by it to an Arkansas resident and awarding plaintiffs $25,000 in underinsured motorist benefits.

FACTS
The facts in this case are not in dispute. This litigation arises out of a vehicular accident which occurred on June 25, 1991 in Rapides Parish, Louisiana. Sussanne Holcomb, plaintiff David Holcomb's wife, was a guest passenger in a 1982 Nissan 200 SX owned and driven by Sally D. Bradshaw. All the occupants of the Bradshaw vehicle were residents and domiciliaries of Bismark, Arkansas. The Bradshaw vehicle was stopped in obedience to a red traffic signal light when it was struck in the rear by a vehicle driven by Karen Frazier and owned by Steve Frazier, both residents and domiciliaries of Alexandria, Louisiana.
The vehicle operated by Frazier was insured by State Farm, with liability coverage limits of $25,000/50,000/25,000. The plaintiffs settled their claim against the Fraziers and State Farm for payment of the full policy limit of $25,000 and released the Fraziers and State Farm from all further liability, reserving their rights to proceed against any and all uninsured/underinsured (UM) coverage which might be available under any other policy or policies.
Ms. Bradshaw and her vehicle were covered by a "personal auto policy" issued by Universal Insurance Company (Universal) of Fort Smith, Arkansas. The policy was issued and delivered in Arkansas by the Hastings Insurance Agency of Hot Springs, Arkansas and covered Ms. Bradshaw's 1982 Nissan 200 SX which was licensed and titled in Arkansas.
The Holcombs' damages admittedly exceeded the limits of the Frazier policy and they filed this action against Universal seeking underinsured motorist benefits under the Bradshaw policy. Under Arkansas law, UM coverage is separable into two different components: uninsured motorist coverage and underinsured motorist coverage. Ms. Bradshaw's policy provided uninsured motorist coverage, but she had rejected underinsured motorist coverage.
Universal filed a motion for summary judgment claiming that Ms. Bradshaw's policy clearly showed she had rejected underinsured motorist coverage. In denying Universal's motion, the trial court applied Louisiana law, stating in reasons for judgment:
As an initial matter it must be determined which law to apply to the contract of insurance, Louisiana's or Arkansas'. The general rule for determining which state's laws govern the substance of a contract is provided in La.C.C. Art. 3537, which states:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
In analyzing the facts and law, the trial judge relied on three cases: Bell v. State Farm Fire and Casualty Co., 527 F.Supp. 300 (1981); Willett v. National Fire and Marine Insurance Company, 594 So.2d 966 (La.App. 3rd Cir.1992), writ denied, 598 So.2d 355 (La.1992); Bloodworth v. Carroll, 455 So.2d 1197 (La.App.2d Cir.1984); and, concluded:
After evaluating the strength and pertinence of the relevant policies of Louisiana and Arkansas as directed by La.C.C. Art. 3537, it is apparent that Louisiana is the state whose policies would be most seriously impaired if its law were not applied to *720 this issue. Therefore this court will use Louisiana law to determine what coverage if any is provided by the Universal insurance policy issued to Ms. Bradshaw.
Generally, uninsured motorist coverage is required by law to be included in all automobile liability insurance "delivered or issued for delivery in this state" unless rejected by the insured. La.R.S. 22:1406D(1)(a)(i).
Even if the insurance is not "delivered or issued for delivery" in this state, the same uninsured motorist coverage requirement applies to "any liability insurance covering any accident which occurs in this state and involves a resident of this state". La.R.S. 22:1406D(1)(a)(iii); Willett, supra, 594 So.2d at p. 969.
While there is a conceptual difference, there is no legal distinction between underinsured motorist coverage and uninsured motorist coverage in Louisiana. La.R.S. 22:1406D(2)(b) states:
For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motorist vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurer's [sic] or as determined by final adjudication.
In Arkansas, uninsured motorist coverage and underinsured motorist coverage are different and it is possible to reject underinsured motorist coverage while retaining uninsured motorist coverage.
In Louisiana, to achieve the same result, uninsured motorist coverage must be rejected. This clearly was not done by Ms. Bradshaw. She rejected underinsured motorist coverage instead. This is not a valid rejection of uninsured motorist coverage under La.R.S. 22:1406D(1)(a)(i) and uninsured motorist coverage covers the plaintiff's claim arising from this accident.
In accordance with his reasons for judgment, the trial judge found Universal's policy provided $25,000 of underinsured motorist coverage and awarded same to plaintiffs.
On appeal, Universal argues that the trial judge erred in applying Louisiana law to plaintiffs' action. We agree and reverse.

LAW AND DISCUSSION
La.C.C. arts. 3515 through 3549, which deal with conflicts of law, was passed by Acts 1991, No. 923. Section four of that act provides: "This Act shall become effective on January 1, 1992, and shall apply to all actions filed after that date ". (emphasis ours). Plaintiffs' action was filed in May 1992. Therefore, these articles enacted by the legislature in 1991 are applicable to this suit.
We note that the trial judge, in his reasons for judgment, stated that he was relying on La.C.C. art. 3537, yet despite that statement he went on to rely on three cases, all of which predate Article 3537 and which, had they been decided under the present articles, probably would have been decided differently. In fact, the court in Willett, supra, at 969, stated:
Louisiana's new law of choice of law, Act 923 of 1991, did not become effective until January 1, 1992, and therefore it does not apply to this case. To answer the question we must look to the jurisprudence....
We find the trial judge's analysis in this case clearly wrong.
La.C.C. art. 3515 states:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
*721 Revision comment (b) to Article 3515 explains the objective of the new conflicts of law articles:
(b) The objective. The first paragraph of this Article enunciates the objective of the choice-of-law process. The objective is to identify "the state whose policies would be most seriously impaired if its law were not applied to that [particular] issue", that is, the state which, in light of its relationship to the parties and the dispute and its policies rendered pertinent by that relationship, would bear the most serious legal, social, economic, and other consequences if its law were not applied to that issue.
The negative phrasing of this objective is deliberate and is intended to disassociate the approach of this Article and of this Book from the so-called "governmental interest analysis" and other modern American approaches that seem to perceive the choice-of-law problem as a problem of interstate competition rather than as a problem of interstate cooperation in conflict avoidance.
Revision comments (c) and (d) to Article 3537 explain that article's relation to Article 3515 and the process to be used in interpreting Article 3537:
(c) Relation to Article 3515. The first paragraph of this Article enunciates the objective of the choice-of-law process for contract conflicts in language that is purposefully identical to that of the first paragraph of Article 3515. These two Articles and the comments accompanying them are intended to be read together. As in Article 3515, supra, the objective is to identify "the state whose policies would be most seriously impaired", that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences "if its law were not applied" to the issue at hand. As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision on each of the involved states with a view towards accommodating their respective interests rather than selfishly promoting the interests of one state at the expense of the others.
The second paragraph of this Article prescribes the process or method for attaining the objective enunciated in the first paragraph in language that is parallel to, though more specific than, the language employed in the second paragraph of Article 3515. Article 3537 adds specificity to the description of this process by: providing an illustrative list of the factual contacts that are usually pertinent in contract conflicts; by adding to the list of "policies mentioned in Article 3515" certain sets of policies that are ex hypothesi pertinent in contract conflicts; and by providing that the evaluation of the strength and pertinence of the involved policies is to be made "in the light of ... the nature, type, and purpose of the contract".
(d) The process. Thus, the first step of the process is to identify "the relevant policies of the involved states". A state is considered "involved" when it has any of the factual contacts expressly listed in the second paragraph of this Article or included by implication in the phrase "pertinent contacts". The "relevant policies" of that state are identified through the resources of the interpretative process by focusing on the specific rules of substantive contract law whose applicability is being urged in the particular case.
The second step of the process is to evaluate "the strength and pertinence of [these] policies ... in the light of the three sets of factors listed in the second paragraph, to wit: (i) the factual contacts of each involved state to the parties and the transaction; (ii) the "nature, type and purpose of the contract"; and (in) the policies listed in clause (3).
The only case that we have found applying the new conflicts of law articles is Levy v. Jackson, 612 So.2d 894 (La.App. 4th Cir. 1993). That case presented an issue very similar to the one presented here. The operative facts in Levy were that a guest passenger, a minor, sued her host driver (her father) for injuries suffered in an accident occurring *722 in Louisiana. The father's policy was issued in Alabama, insuring a car registered and garaged in Alabama. The insured driver and the plaintiff were domiciled in Alabama. The issue presented was whether Louisiana or Alabama law applied. If Louisiana law applied, the guest passenger could recover for the driver's ordinary negligence. If Alabama law applied, the guest passenger would recover only for willful or wanton conduct of the driver. In Levy, supra, at 897, the court reached the following conclusion:
... [T]his conflict of law problem is foremost and principally an issue of insurance coverage, and therefore one of contract. When the basics are examined, Heather Levy is suing her father's insurance company and the issue is whether that insurance covers her claim. C.C. Art. 3537 says that an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied, and section (1) indicates that domicile of the parties is a paramount question. Another factor given strong consideration is the expectations of the parties. In this case that means risks coverage and premiums paid. They are directly related.
State Farm issued a policy in Alabama, accepting the risks of loss under Alabama law, and charged premiums accordingly. Patrick Levy could not expect coverage of risks not contemplated by either him or his insurer. Determination of coverage vis a vis Patrick Levy and State Farm should be governed by Alabama law.
The action under consideration herein is likewise a matter of contract interpretation. The insurance policy herein was entered into between an Arkansas insurance company (Universal) and an Arkansas resident/domiciliary (Bradshaw) to provide coverage on a vehicle registered, titled and garaged in Arkansas. That policy is being sued on by other Arkansas residents/domiciliaries seeking coverage under that contract (policy) for damages they allegedly sustained. The only Louisiana contacts are the heretofore released tortfeasor and the site of the accident. Neither is relevant to the issues to be decided herein. No Louisiana resident or company is a party to this action; and, inasmuch as a complete release has been executed in favor of all Louisiana parties, the outcome of this action will not affect any policy of or party in this state.
On the other hand, the application of Louisiana law in this case would, in our opinion, impinge on the State of Arkansas' right to regulate the insurance industry in that state. The policy in question was written in conformity with Arkansas law. The evidence also shows that although Ms. Bradshaw elected to purchase uninsured motorist coverage, she rejected, in writing, underinsured motorist coverage, which is permissible under Arkansas law. Universal issued a policy to its insured in conformity with her express wishes. Ms. Bradshaw could not expect coverage for risks not contemplated by the parties. The Universal policy is a contract in which Universal agrees to insure Bradshaw against certain limited risks for a set premium. Determination of coverage must and should be governed by Arkansas law.
Finally, we conclude that La.R.S. 22:1406D(1)(a), as amended by Act 444 of 1987, which provides that the requirement for uninsured motorist coverage shall be applicable to any liability insurance covering any accident which occurs in this state and involves a resident of this state, is inapplicable under the circumstances. This is so because we conclude, under our conflicts of law provisions, that Arkansas law should govern the outcome of this proceeding. The sub-part of the cited statute referred to above is Louisiana law and therefore inapplicable. In this case, although the accident occurred here and involved a Louisiana resident, the latter is totally unaffected by our decision. Were the circumstances otherwise, i.e., if a Louisiana resident were directly affected, this fact would not necessarily dictate the application of Louisiana law but would be pertinent to a determination of the choice of law to be applied.
For the reasons stated, the judgment of the trial court is reversed and plaintiffs' suit is ordered dismissed. Plaintiffs are cast with all costs, both at the trial level and on appeal.
REVERSED AND RENDERED.