702 So.2d 1204 (1997)
Steve PLYMAN
v.
Tammy E. STRAIN, Sultan Mahmood, Liberty Cab Company, et al.
No. 97-CA-1169.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 1997.
*1205 Morton H. Katz, Herman, Herman, Katz & Cotlar, New Orleans, and Michael J. Bourquard, New Orleans, for Plaintiff-Appellant Steve Plyman.
Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, New Orleans, for Defendant-Appellee Employers' Fire Insurance Co.
Before KLEES, WALTZER and MURRAY, JJ.
KLEES, Judge.
On November 3, 1993, plaintiff-appellant Steve Plyman ("Plyman") filed a petition for damages against defendant-appellee, Employer's Fire Insurance Company ("EFIC"). On August 5, 1996, the EFIC filed a motion for summary judgment which was granted. Thereafter, on January 30, 1997, a motion for a new trial was denied. After thoroughly reviewing the record and applicable case law, we affirm the trial court's judgment granting summary judgment.

Facts and Procedural History
On February 19, 1993, Plyman, a passenger in a taxi, allegedly sustained injuries in an automobile accident that occurred in New Orleans, Louisiana. At the time of the accident, Plyman was residing in Alexandria, Virginia, living in an apartment with his then fiancee.
When the accident occurred, Plyman was in the United States Armed Forces as a member of the United States Navy, and the Presidential Honor Guard. Plyman enlisted in the United States Navy on May 15, 1991. When he enlisted, Plyman left his parent's home, to which he returned in July of 1995. Thus, Plyman was not residing at his parents home at the time of the 1993 accident. Plyman's residency is at issue because he seeks to recover under his father's uninsured motorists policy issued by EFIC, despite coverage which he collected through his own automobile insurance policy with Progressive Insurance Company.
Asserting his rights under his father's policy, Plyman contends that he was a resident of his father's home in Brunswick, Georgia at the time of the accident in New Orleans, and thus entitled to recover under his father's policy.
Disagreeing with Plyman's position, EFIC filed a Motion for Summary Judgment, arguing that Plyman was not entitled to benefits under his father's policy, as he was not residing at his father's home while in the military.
By judgment dated November 22, 1996, the trial court granted the motion for Summary Judgment. Plyman subsequently filed a Motion for New Trial on the summary judgment, which the court denied.

Argument on Appeal
Plyman contends that the trial court erred by (1) granting summary judgment where there were issues of material fact in disputethe Appellant's residencyand (2) EFIC did not maintain its burden of proof that no disputed material facts exist.
Appellate courts must review summary judgments de novo. Accordingly, appellate courts must ask the same questions as do the trial courts: whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law.
Procedurally, the court's first task on a motion for summary judgment is to determine *1206 whether the moving party's supporting documentspleadings, deposition, answers to interrogatories, admissions and affidavits are sufficient to resolve all material factual issues. La.Code Civ. Pro. Art. 966(B). If the court finds that a genuine issue of fact exists, summary judgment must be denied. Walker v. Kroop, 96-0618 (La. App. 4 Cir 7/24/96), 678 So.2d 580, 584. If the court finds that the moving party established a prima facie case that no genuine issues of material fact exist, the party opposing the summary judgment must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La.Code of Civ. Proc. Art. 966(C).
The 1996 amendments to La.Code Civ. Pro. Art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Walker, 678 So.2d at 584. However, the amendments do make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules should be liberally applied, requiring courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the pre-amendment jurisprudence which proclaimed just the opposite that summary judgments were not favored and thus should be strictly construed. Accordingly, the language of the amendment is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.

Plyman Is Not Entitled To Collect Under His Father's Uninsured Motorist Policy
Georgia law applies to the interpretation of the policy language in this case. La. Civ.Code Ann. art. 3537[1]; Levy v. Jackson, 612 So.2d 894 (La.App. 4th Cir.1993); Holcomb v. Universal Ins. Co., 93-1424 (La. App. 3d Cir. 6/1/95), 640 So.2d 718, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643. Georgia law is clear that uninsured motorist coverage applies to the named insured, the spouse of any named insured and relatives of either, if they are residents of the same household. Gulf American Fire and Casualty Company v. McNeal, 115 Ga.App. 286, 154 S.E.2d 411 (1967). In determining whether a relative is a resident of the insured's household for uninsured motorists coverage provisions, "the aggregate details of the family's living arrangements must be considered." Rainey v. State Farm Mutual Auto. Insurance Company, 217 Ga.App. 618, 619, 458 S.E.2d 411 (1995), quoting Davenport v. Aetna Casualty & Surety Company of Illinois, 144 Ga.App. 474, 241 S.E.2d 593 (1978). Of critical importance to the analysis is "whether the family members have established and maintained separate households under different managements." Rainey, at 618, 458 S.E.2d 411. Additionally, the court in Rainey stated that a household relationship may end if one of the relatives has demonstrated an intent to remove himself from the household and has taken some action toward doing so. Id.
In this case, the aggregate circumstances of Plyman's living arrangement clearly illustrate that he was not a resident of his parent's household at the time of the accident giving rise to this litigation; on February 19, 1993, Plyman was living in Virginia, where he remained until 1995, while enlisted in the Navy.
Plyman contends that he is a resident of his father's home because he maintained his Georgia driver's license and voter registration, kept some clothes in his old room in his father's home, and received letters and bills at his father's address. However, these links to Plyman's father's home in Brunswick, Georgia are not sufficient to overcome the fact that Plyman maintained a separate *1207 household in Alexandria, Virginia, and was not living with his father when the accident occurred.
Further, the facts demonstrate that Plyman's family did not consider him a resident of the family home, but rather a resident of Virginia where he maintained a separate household. Plyman conceded that although his car insurance bill was sent to his father's home, he paid his own insurance. Additionally, his father's automobile policy did not list him as either an operator or non-operator of any of the family vehicles. Plyman also admitted that he paid all of his expenses and did not depend upon his parents for support.
Because it is clear that, under Georgia's jurisprudence, Mr. Plyman could not be considered to be a "resident of [the insured's] household" as defined in the contract of insurance, the defendant is entitled to judgment as a matter of law.
AFFIRMED.
NOTES
[1] La. Civ.Code Ann. art 3537: Except as otherwise provided in this title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract and the place of domicile, habitual residence, or business of the parties ...