753 So.2d 416 (2000)
Bobby and Bonnie ADAMS, Plaintiffs-Appellees,
v.
Dallas THOMASON, et al., Defendants-Appellants.
No. 32,728-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
Rehearing Denied March 30, 2000.
*417 Hayes, Harkey, Smith & Cascio By Charles Sterling Smith, Monroe, Counsel for State Farm Automobile Insurance Company and Rodney Grubisic.
Walker, Passman & Michiels By James Morgan Passman, Alexandria, Counsel for Hartford Insurance Company of the Midwest.
Cotton, Bolton, Hoychick & DOUGHTY By Terry A. Doughty, Rayville, Counsel for Louisiana Farm Bureau, Moody M. Adcock, Jr., Dallas Thompson.
*418 Charles G. Tutt, Shreveport, Counsel for Hartford Insurance Company of the Southeast.
Jay P. Adams, Monroe, Counsel for Bobby and Bonnie Adams.
Davenport, Files & Kelly By Mike C. Sanders, Carey B. Underwood, Monroe, Counsel for American Central Insurance Company.
Donald L. Kneipp, Monroe, Counsel for Lucknow, Inc.
Before GASKINS, CARAWAY and KOSTELKA, JJ.
GASKINS, J.
This appeal, involving several motions for summary judgment on insurance coverage, arises from an accident wherein plaintiff Bobby Adams was struck by a cotton trailer while standing on the side of Highway 80 near the village of Girard in Richland Parish. The trial court ruled on a number of insurance coverage issues, and three groups of litigants appealed: State Farm Automobile Insurance Company, the uninsured (UM) insurer of Rodney Grubisic; Moody M. Adcock, Jr. and the insurer of the vehicle he was driving at the time of the accident, Louisiana Farm Bureau Casualty Insurance Company; and Hartford Insurance Company of the Midwest ("Hartford Midwest"), the insurer of Adcock's personal vehicle. Hartford Midwest and Louisiana Farm Bureau also answered the appeal of State Farm.

FACTS
On October 24, 1994, Bobby Adams, an employee of Start Water System, Inc., was driving a vehicle owned by his employer. He had gotten out of the vehicle and crossed the road to speak to Rodney Grubisic, who was parked on the shoulder of Highway 80. Grubisic's employer, Northern Clearing, was clearing the roadside for a fiber optic right-of-way. Adams was to show Northern Clearing employees where water lines were located so that they would not be accidentally damaged in the clearing process. Grubisic remained in his vehicle, and the two men introduced themselves and talked through the open window for between one to five minutes. As Adams stood with his left arm resting against Grubisic's truck, a pick-up truck driven by Moody M. Adcock, Jr. went past. When he saw how closely that vehicle was going to pass him, Adams put both arms on top of Grubisic's truck and tried to climb out of the way. The cotton trailer being pulled by Adcock struck Adams and threw him against the Grubisic truck.
Adams and his wife, Bonnie Adams, filed suit seeking damages for his injuries. In a series of amended petitions and third-party demands, the following were named defendants:
(1) Adcock, the driver who injured Adams, and the liability insurer on his personal vehicle, Hartford Midwest;
(2) Dallas Thomason, the owner of the truck Adcock was driving when Adams was injured, and his auto insurer, Louisiana Farm Bureau;
(3) Archibald Gin Company, the owner of the cotton trailer that struck Adams, and its insurer, Hartford Insurance Company of the Southeast ("Hartford Southeast");
(4) Grubisic, the person to whom Adams was speaking when he was injured, and his insurer, State Farm;
(5) American Central Insurance Company, the insurer of Start Water System, Adams' employer;
(6) Louisiana Farm Bureau as Adams' UM carrier on his personal vehicle;
(7) Lucknow, Inc., as Adcock's employer.
Motions for summary judgment were filed by numerous parties. Of particular relevance to the present appeals are the following motions:
American Central's motion arguing that it did not provide UM coverage for Adams because he was not "occupying" *419 the Start Water System vehicle at the time of the accident.
Plaintiffs' motion asserting that the State Farm policy provided UM coverage because Adams was "occupying" the Grubisic truck.
Hartford Southeast's motion in which it contended that it did not provide coverage under its policy to Archibald Gin because the truck pulling the trailer was not owned, hired or borrowed by Archibald Gin and it was not a "covered auto" under its policy definitions. However, the motion of Thomason, Adcock, and Louisiana Farm Bureau and a motion by the plaintiffs asserted that Hartford Southeast provided coverage under either its business automobile coverage provisions and/or its commercial general liability coverage provisions.
In November 1998, the trial court issued a well-reasoned written opinion, which it subsequently further clarified in oral reasons assigned at a December 1998 hearing. Essentially, the trial court found coverage by Louisiana Farm Bureau as the insurer of the Thomason truck and as Adams' UM insurer, Hartford Midwest as Adcock's liability insurer, and State Farm as Grubisic's UM insurer. It dismissed coverage claims as to Hartford Southeast and American Central.
Also in December 1998, the parties entered into a partial compromise agreement. It was stipulated that coverage was provided in the following amounts under the stated policies: Louisiana Farm Bureau policy issued to Thomason$100,000; Hartford Midwest policy issued to Adcock $100,000; UM provisions of Louisiana Farm Bureau policy issued to Adams$25,000. It was further stipulated that if the trial court found there was coverage under any or all of the policies of Hartford Southeast, State Farm and/or American Central[1], that the plaintiffs would be entitled to a total of $300,000 in settlement proceeds, $150,000 of which was to be payable upon execution of the agreement. This initial payment was funded equally by Hartford Midwest and Louisiana Farm Bureau. The remaining balance would be paid by those insurers having coverage as found and ranked by the trial court. All parties waived any claims against Grubisic and State Farm as his liability insurer. American Central and State Farm waived their rights of contribution or reimbursement against Thomason, Adcock and Lucknow. All defendants reserved their rights to appeal.
Judgment in conformity with the trial court opinion and the settlement was signed on December 8, 1998. Dismissed were Hartford Southeast, American Central, Grubisic and State Farm as Grubisic's liability insurer. Judgment in the amount of $300,000 was awarded in favor of the plaintiffs and against Adcock and Louisiana Farm Bureau, Hartford Midwest and State Farm as Grubisic's UM insurer. All remaining and incidental demands were dismissed.
On January 11, 1999, a receipt, release, assignment and satisfaction of judgment was filed. The plaintiffs acknowledged their receipt of $300,000. For purposes of appeal, they also assigned to the parties found liable their rights against Hartford Southeast and American Central.
Appeals were filed by State Farm, by Hartford Midwest, and by Louisiana Farm Bureau (as liability insurer) and Adcock. Hartford Midwest and Louisiana Farm Bureau (as UM insurer) both answered the appeal of State Farm.

SUMMARY JUDGMENT
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors *420 of Louisiana State University, 591 So.2d 342 (La.1991). Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600 (La.1986).
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties' intent, as reflected by the words of the policy, determine the extent of coverage. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Interstate, supra; Reynolds, supra.

HARTFORD SOUTHEAST'S COVERAGE
The cotton trailer which struck Adams belonged to Archibald Gin and was insured by Hartford Southeast. The trial court found that the Hartford Southeast policy insuring Archibald Gin did not provide coverage in the instant case. All of the appellants complain that the trial court erred.
The relevant facts pertaining to the involvement of Hartford Southeast's named insured, Archibald Gin Company, are as follows: The gin owned cotton trailers which were loaned to its customers to facilitate transportation of their cotton to the gin. Dallas Thomason was an officer and shareholder of the gin company. He was also a cotton farmer, as were his sons. As such, they were customers of the gin to whom cotton trailers were routinely loaned. At the time of the accident, Moody Adcock was driving a truck owned by Thomason as an individual. The cotton trailer Adcock was pulling was loaded with cotton owned by Thomason's son. Adcock was paid in cash by Thomason from the funds of Lucknow, Inc., a farming corporation of which Thomason was a shareholder.

Business Auto Coverage
Hartford Southeast provided a policy to Archibald Gin which contained two separate coverage parts, a business auto coverage form and a commercial general liability form. The liability portion of the business auto policy declares that the insurer will "pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'"
The business auto policy issued to the gin company provided coverage for "HIRED `AUTOS' ONLY" and "NONOWNED `AUTOS' ONLY." The latter term was described in Section I(A)(9) of the business auto policy as follows:
NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
The trial court found no coverage under the business auto policy because neither Adcock nor Thomason was an "insured" and the truck driven by Adcock was not a "covered auto." The court further found that the cotton trailer was not an "auto" under the policy terms because it exceeded the weight limitations specified for a "trailer" *421 to be considered an "auto." Thus, the "NONOWNED `AUTOS' ONLY" section was found to be inapplicable to the cotton trailer.
The appellants assert that the trial court erred in not finding that the "NONOWNED `AUTOS' ONLY" provided coverage. They claim that Adcock was using a vehicle not owned, leased, hired, rented or borrowed by Archibald Gin but which was being used in connection with its business. In support of this argument, they cite Dean v. State Farm Mutual Automobile Insurance Company, 518 So.2d 1115 (La.App. 4th Cir.1987), writ denied, 522 So.2d 1096 (La.1988), and Gore v. State Farm Mutual Insurance Company, 26,417 (La.App.2d Cir.1/25/95), 649 So.2d 162, writ not considered, 95-0503 (La.4/21/95), 653 So.2d 555, writ denied, 95-0481 (La.4/21/95), 653 So.2d 555.
In Dean, a virtually identical "NONOWNED `AUTOS' ONLY" clause in a business auto policy was involved. There an employee of the insured was driving a vehicle owned by neither the employee or his employer; coverage was found because the employee was in the course and scope of his employment at the time of the accident. Moreover, the employer was found to be vicariously liable for the damages caused by its employee.
In the Gore case, Gore was driving a truck and towing a vehicle driven by George, a subcontractor for Gore's logging company. Due to bad weather, they had performed no work that day, and Gore was towing George's disabled vehicle to George's home as a favor. As a result of George's negligence in allowing his vehicle to go off the road, Gore's truck veered into the path of another vehicle. Gore was killed in the head-on collision. The policy there was issued to the logging company owned and operated by Gore, and its "NONOWNED `AUTOS' ONLY" clause was identical to the one in the present case. The court reviewed the jurisprudence addressing this policy language and concluded that there was no coverage because the "nonowned auto" was not being used in the course and scope of the insured's business or personal affairs.
In the instant case, we note that Adcock was not an employee of Archibald Gin. He was, at most, either an employee of Lucknow, Inc., or of Dallas Thomason in his individual capacity. As such, when he was delivering cotton owned by Thomason's son, he was acting in the course and scope of his employment with either Lucknow or Thomason. The gin company exercised no control over Adcock. Consequently, Archibald Gin, the insured under the Hartford Southeast policy, had no vicarious liability for Adcock's negligence. The business auto policy specified that the insurer would pay all sums its insured was legally required to pay as damages. Adcock's hauling cotton to the gin is more properly considered "in connection with" the business of his employer (Lucknow, Inc. or Thomason) than of the gin. To hold otherwise wouldas pointed out by Hartford Southeastbe tantamount to providing coverage under the gin's policy to any vehicle driven by any person to transport cotton to the gin. Such overwhelmingly expansive coverage was clearly not intended by the parties to the insurance contract.
Like the trial court, we find that the business auto policy issued by Hartford Southeast to Archibald Gin Company does not provide coverage under the circumstances of the present case.

Commercial General Liability Coverage
The appellants also contend that the trial court erred in finding that the commercial general liability (CGL) provisions of the Hartford Southeast policy issued to Archibald Gin did not provide coverage under the facts of the instant case.
The policy required the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies."
*422 Section I, Paragraph 2 of the CGL policy set forth policy exclusions which, in relevant part, included the following:
g. Aircraft, Auto or Watercraft
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
h. Mobile Equipment
"Bodily injury" or "property damage" arising out of:
(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or
(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.
The definition of "auto" specifically excluded "mobile equipment."
An endorsement to the CGL policy provided that:
It is agreed that the definition of "mobile equipment" includes cotton trailers and farm equipment.
Section II, Paragraph 3 of the CGL policy stated as follows:
With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.
Under Section V, the CGL policy gave a detailed definition of "mobile equipment"; included were a variety of machinery and vehicles, some of which self-propelled and others which were not.
In its written opinion, the trial court denied coverage because cotton trailers are excluded from any motor vehicle registration in Louisiana, thus rendering inapplicable the policy's definition of an "insured" referring to a person driving "mobile equipment" registered in the insured's name under any motor vehicle registration law.[2]
The appellants assert that cotton trailers were specifically included in the CGL coverage by endorsement as "mobile equipment" and that the trial court erred in relying upon the motor vehicle registration language.
Our review of the CGL policy leads us to conclude that it does not provide coverage under the facts of this case. This policy primarily provides coverage of general business operations. As with the business auto policy, application of the CGL policy is premised upon the insured becoming legally obligated to pay damages. As discussed supra, Archibald Gin has no vicarious liability for Adcock's actions.
Cotton trailers are defined as "mobile equipment" by endorsement. Under the terms of the CGL policy, "any person" driving "mobile equipment" along a public highway with the owner's permission is "an insured." However, the policy further requires that the "mobile equipment" at issue be "registered in your name under any motor vehicle registration law." Cotton trailers are excluded from the requirements of the motor vehicle registration law in this state. La. R.S. 47:502. It is apparent that this section of the policy applies only to self-propelled vehicles which are required to be registered under the motor vehicle registration law. It does not, under the facts presented in this case, make Adcock an insured under the CGL policy.
As to the reason for adding cotton trailers to the definition of "mobile equipment" by endorsement, this was explained by the *423 deposition testimony of a commercial business manager of Hartford Southeast. She stated that because cotton trailers were left stationary in fields for periods of time, there was concern that children might play on them and be injured.
We agree with the trial court and find that the CGL policy issued by Hartford Southeast to Archibald Gin Company does not provide coverage in the instant case.

AMERICAN CENTRAL'S UM COVERAGE
Prior to the accident, the plaintiff, Adams, had driven Start Water System's truck and parked it across the road from the place he met Grubisic. The appellants maintain on appeal that the trial court erred in finding that American Central's policy on the company truck that Adams was driving did not provide UM coverage to him. They claim that since Adams was a department supervisor, he was intended by his employer to be a named insured for both liability and UM purposes and that the fact that he was not occupying the vehicle at the time of the accident should not be determinative. Louisiana Farm Bureau argues that Adams should be covered under the American Central policy because he was in the "zone of protection" contemplated by its UM coverage.
In brief, American Central reiterated its position that its policy provided no UM coverage to Adams because he was not "occupying" the vehicle it covered at the time of the accident. It also challenged State Farm's argument that Adams, as a high-ranking employee of Start Water Systems, should be considered a named insured for UM purposes.

Policy provisions
The UM provisions of the policy issued by American Central to Start Water Systems, Inc., were contained in an endorsement and provided that:
We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle."
Section B of the endorsement gave, in relevant part, the following definition of "insured":
WHO IS AN INSURED
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto...."
The definition of "occupying" is given as meaning "in, upon, getting in, on, out or off."

Discussion
In order to be covered by the policy, Adams must be an insured. To be so considered, he must either be included under the first definition, "you," in connection with the named insured, his employer a corporation, or he must be "occupying" the covered auto under the third definition. Our review of the jurisprudence establishes that he comes under neither definition.
In Bryant v. Protective Casualty Insurance Company, 554 So.2d 177 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1129 (La. 1990), this court considered a similar situation involving a corporation as the named insured in a UM coverage policy. We found that the policy definition of an "insured" as "you or any family member" did not include employees of a corporate named insured. The corporation's employees were covered only when occupying vehicles for which the corporation had bought insurance.
More recently, in Valentine v. Bonneville Insurance Company, 96-1382 (La.3/17/97), 691 So.2d 665, the Louisiana Supreme Court noted that:
[T]he failure to have someone designated for coverage as a "you" (a named insured) is of no moment. In most cases, as in the present case, UM coverage *424 is provided to protect against bodily injury damages.
Corporations ..., legal persons that are incapable of sustaining bodily injury damage, buy UM policies in which the corporation ... is the named insured. As in the instant case, coverage is provided under these policies for anyone "occupying" a covered auto.
The Valentine court also observed in a footnote that "Louisiana courts have almost uniformly held that when the named insured is ... a corporation, coverage is restricted to the named insured and does not extend to the ... employees of the corporation." It then listed cases from all five Louisiana courts of appeal supporting this statement, including the Bryant case. See also Minor v. Casualty Reciprocal Exchange, 962096 (La.App. 1st Cir. 9/19/97), 700 So.2d 951, writ denied, 97-2585 (La.12/19/97), 706 So.2d 463.
We find that Adams was not a "named insured" under the American Central policy issued to his employer. The question remains whether he may be deemed as "occupying" his work truck at the time of the accident in order to fall within the remaining definition of an "insured" under the policy.
In the Valentine case, a deputy sheriff was directing traffic at the scene of a traffic stop when he was struck and injured by an uninsured motorist. The UM policy issued to the sheriffs department provided coverage to him only if he was "occupying" a covered auto. That policy contained the same definition of "occupying" as the instant suit, i.e., "in, upon, getting in, on, out or off." The Louisiana Supreme Court looked to the "clear" and "unambiguous" policy language and held that the deputy sheriff was not "occupying" his patrol car as required by the policy and denied coverage.
The same logic applies here. At the time he was injured, Adams had walked 40 to 50 feet from the Water System's truck he was driving that day to the Grubisic vehicle across the road. When he was struck by the cotton trailer, he was standing next to the Grubisic vehicle where he had been conversing with Rodney Grubisic for several minutes. Adams was not "in" the Water System's truck, "upon" the truck, "getting in" the truck, "getting on" the truck, "getting out" of the truck, or "getting off" the truck. Consequently, we find that Adams was not "occupying" the truck within the meaning of the policy. Like the trial court, we find that summary judgment in favor of American Central, dismissing it from this lawsuit, is appropriate.

STATE FARM'S UM COVERAGE
Immediately prior to the accident, Adams was leaning his arm on the Grubisic vehicle, then tried to climb onto it as it became apparent that he was about to be struck by the cotton trailer. The trial court found that State Farm's policy on the Grubisic's vehicle provided UM coverage to Adams because, according to the policy definitions, he was "occupying" that vehicle at the time of the accident. State Farm contends that this ruling was erroneous on several grounds. First, it asserts that the policy was issued and delivered in Wisconsin to a Wisconsin domiciliary and that under Wisconsin law, the policy did not provide UM coverage. Also, even if Louisiana law were applied, State Farm claims that no coverage would be available because Adams lacked a sufficient relationship with the Grubisic vehicle to be deemed to be "occupying" it. Hartford Midwest and Louisiana Farm Bureau both answered State Farm's appeal and argue that the policy did provide coverage.

Policy provisions
Grubisic had an auto insurance policy issued to him in Wisconsin by State Farm. Under this policy, he paid a premium to have uninsured (UM) motor vehicle coverage. He did not, however, have underinsured (UIM) motor vehicle coverage.
*425 An "underinsured motor vehicle" is defined in the State Farm policy issued to Grubisic as a motor vehicle:
1. the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident; and
2. whose limits of liability for bodily injury liability:
a. are less than the amount of the insured's damages; or
b. have been reduced by payments to persons other than the insured to less than the amount of the insured's damages. [emphasis theirs]
The UIM provisions further provide that the definition of an "underinsured motor vehicle" does not include a vehicle defined in the policy as an "uninsured motor vehicle."
The uninsured coverage provisions of the State Farm policy stated:
We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle [emphasis theirs].
An "uninsured motor vehicle" is defined, in relevant part, as:
1. a land motor vehicle, the ownership, maintenance or use of which is:
a. not insured or bonded for bodily injury liability at the time of the accident; or
b. insured or bonded for bodily injury liability at the time of the accident; but
(1) the limits of liability are less than required by the financial responsibility act of the state where your car is mainly garaged; or
(2) the insuring company denies coverage or is or becomes insolvent;... [emphasis theirs]
An "insured" is defined, in pertinent part, as:
1. the first person named in the declarations;
2. his or her spouse;
3. their relatives; and
4. any other person while occupying:

a. your car ....
5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above. [emphasis theirs]
"Occupying" is defined as meaning "in, on, entering or alighting from."

Conflict of law
La. R.S. 22:1406(D)(1)(a)(i) requires that auto insurance delivered or issued for delivery in this state for a vehicle registered in Louisiana must have UM coverage equal to the liability amount unless the named insured has rejected UM coverage or elected lower limits. Such rejection must be in writing on a form provided by the insurer. La. R.S. 22:1406(D)(1)(a)(ii). In 1985, the Louisiana Supreme Court held in Snider v. Murray, 461 So.2d 1051 (La.1985), that La. R.S. 22:1406(D)(1) did not affect policies written and delivered in other states covering vehicles garaged or registered elsewhere, even if such vehicles were involved in Louisiana accidents with Louisiana residents. The court suggested that the legislature address the issue. In 1987, the legislature apparently responded to this comment by adding the following language to the statute: "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." La. R.S. 22:1406(D)(1)(a)(iii).
Since this amendment, the appellate courts have sought to resolve the question of whether the amendment to La. R.S. 22:1406(D) automatically requires application of Louisiana law or whether a conflict of laws analysis must be performed under the Louisiana choice of laws articles, *426 La. C.C. art. 3515, et seq. In Dekeyser v. Automotive Casualty Insurance Company, 97-1251 (La.App. 4th Cir. 2/4/98), 706 So.2d 676, that court looked to La. C.C. art. 14, the introductory article to Louisiana conflict of laws. It states: "Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code. [emphasis added]" Applying this provision, the Dekeyser court found that La. R.S. 22:1406(D)(1)(a)(iii) was a specific choice-of-law rule requiring application of Louisiana law in the case before it.
The Third Circuit has considered the issue several times. In Willett v. National Fire and Marine Insurance Company, 594 So.2d 966 (La.App. 3d Cir.1992), writ denied, 598 So.2d 355 (La.1992), the court held that the 1987 amendment to the UM statute legislatively overruled the Snider decision. However, it did not automatically apply Louisiana law; instead it performed a choice-of-law analysis before concluding that Louisiana's interests outweighed those of New Hampshire, the home state of the two accident victims.[3] In Holcomb v. Universal Insurance Co., 93-1424 (La.App. 3d Cir.6/1/94), 640 So.2d 718, writ denied, 94-1740 (La.10/7/94), 644 So.2d 643, the court applied Arkansas law to an interpretation of a policy issued and delivered in Arkansas after conducting a conflict-of-law analysis. There, the accident occurred in Louisiana, but the Louisiana residents involved had settled out of the suit. The court noted that had a Louisiana resident still been in the suit and directly affected, this would be a pertinent factor in determining the choice of law to be applied but it would not necessarily be determinative.
The court reconsidered the matter again in Trautman v. Poor, 96-627 (La.App. 3d Cir.12/11/96), 685 So.2d 516. This time, the court concluded, on the basis of La. C.C. art. 14, that La. R.S. 22:1406(D)(1)(a)(iii) was applicable without first considering the conflict-of-laws principals. However, the court returned to the issue yet once more in Anderson v. Oliver, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434. It rejected the Trautman approach and embraced the method utilized in Willett and Holcomb of employing a conflict-of-laws analysis before applying the UM law.[4]
We concur with the Third Circuit's decision in Anderson and likewise find that it is more appropriate to conduct a full analysis of the conflict-of-laws principles involved than to merely rely upon La. R.S. 22:1406(D)(1)(a)(iii). We now look to the Civil Code articles governing conflict of laws.
The general rule is found in La. C.C. Art. 3515.
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in *427 the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
The more specific rule pertaining to conventional obligations is found in La. C.C. Art. 3537.
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
At the time of the accident in this matter, Rodney Grubisic was a resident of Wisconsin, and the State Farm policy on his truck was issued in Wisconsin. However, he was working in Louisiana. The accident occurred in Richland Parish, Louisiana. Furthermore, several Louisiana residents were involved in and affected by the accident; they include Adams, the injured party; Adcock, the driver of the truck pulling the cotton trailer which hit Adams; and Thomason, the owner of the truck Adcock was driving. Inasmuch as the plaintiff and the defendant tortfeasor are Louisiana residents, the accident occurred in Louisiana, and the defendant whose insurance is at issue was working in Louisiana, we find that Louisiana had compelling interests that superseded those of Wisconsin and would be adversely affected if Louisiana law were not applied. Louisiana has a substantial interest in regulating awards to victims injured on its highways and in protecting those persons from uninsured and underinsured motorists. Consequently, we find that Louisiana law is applicable to the State Farm policy.

Louisiana law
State Farm further argues that under Louisiana law, UM coverage was not available because there was no relationship between Adams and the Grubisic truck and that mere physical contact with the vehicle was not enough to find coverage. Answering State Farm's appeal on this issue, Louisiana Farm Bureau and Hartford Midwest argue that the trial court was correct in finding that State Farm's policy provided UM coverage to Adams for injuries he sustained while leaning against the Grubisic vehicle.
Just prior to the accident, Adams walked up to the truck where Rodney Grubisic was seated. He and Grubisic, who had not met before, introduced themselves and began to discuss the location of the right of ways. While speaking to Grubisic through the truck window, Adams placed his arm against the truck. At about this time, Adcock was approaching in the Thomason truck. When Adams saw the close proximity with which this truck was going to pass him, he attempted to climb on the Grubisic truck to avoid being struck. However, the cotton trailer hit him, and he was thrown forcefully against the Grubisic truck.
In Hastings v. International Service Insurance Company, 490 So.2d 656 (La.App. 2d Cir.1986), writ denied, 493 So.2d 1223 (La.1986), a gas station attendant was pumping gasoline into an Oldsmobile when *428 another car pinned him between the vehicles. The UM coverage policy on the Oldsmobile contained the same definition of "occupying" as the State Farm policy "in, on, entering or alighting from" the insured vehicle. This court found that actual physical contact with an insured vehicle was sufficient to be construed as "on" the car and thus within the UM coverage. It was sufficient that prior to the accident, the attendant had his hand and knee against the Oldsmobile. The court rejected the insurer's argument that UM coverage should be denied to persons who do not intend to use or ride in the covered vehicle.[5]
Immediately prior to and at the time of the accident, Adams was in actual physical contact with the vehicle covered by the State Farm policy. As he stood next to the Grubisic truck talking to Rodney Grubisic, his arm rested against the truck. (He was not merely thrown into contact with the truck as a result of the accident.) Under the policy definition of "occupying" and the jurisprudence construing that language, Adams was "occupying" the truck; thus, he was an insured under the State Farm policy.
Like the trial court, we find that summary judgment against State Farm on the issue of coverage was appropriate.

CONCLUSION
Summary judgment in favor of Hartford Insurance Company of the Southeast, dismissing it from the suit, is affirmed. Summary judgment in favor of American Central Insurance Company, dismissing it from the suit, is also affirmed. Summary judgment against State Farm Automobile Insurance Company is affirmed.
Costs are assessed equally against the appellants.
AFFIRMED.
CARAWAY, J., concurring in part and dissenting part with reasons.
CARAWAY, J., concurring in part and dissenting in part.
I respectfully dissent in part from the majority's ruling regarding State Farm's UM coverage although I am in full agreement with all other rulings in this insurance coverage dispute.
The Louisiana Supreme Court's ruling in Snider v. Murray, 461 So.2d 1051 (La. 1985) interpreted the application of our UM coverage statute, La. R.S. 22:1406(D), for policies of insurance issued in other states for the owners of out-of-state vehicles. The court found that our statute by its terms does not impose its very substantive coverage obligations upon out-of-state policies which were not "issued for delivery in this state with respect to any motor vehicle ... required to be registered in this state." This language of the statute has never been changed, neither has the introductory sentence of Section 1406(D) which states "the following provisions shall govern the issuance of uninsured motorist coverage in this state." La. R.S. 22:1406(D), emphasis supplied. The 1987 amendment of the statute adding Section (D)(1)(a)(iii) does not directly mention and address the issuance of policies in other states so as to alter the clear and limiting language of the statute which Snider applied. Given the significant question of one state's ability to alter and regulate contractual obligations entered into by parties in other states and the specifics of the Snider ruling, the legislature did not state its intent in Section (D)(1)(a)(iii) to modify or supplement those out-of-state contracts.
Guided with Snider's view of our statute, I would apply the uninsured motorist provision of the State Farm policy. The Adcock-driven vehicle would be an uninsured motor vehicle under the State Farm policy *429 if the vehicle was completely without insurance or had coverage less than required under Wisconsin law. Wisconsin law requires motor vehicle liability policies to carry limits of 25/50/10. W.S.A. 344.33(2). Thus, since the subject vehicle had coverage in excess of this amount, the State Farm UM coverage as provided in the Wisconsin policy does not apply.

APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY and KOSTELKA, JJ.
Rehearing Denied.
STEWART and CARAWAY, JJ., would grant rehearing.
NOTES
[1] The coverage amounts for these policies were stipulated as follows: Hartford Southeast, commercial liability of $500,000 and auto liability of $1 million; State Farm, UM coverage of $100,000; and American Central, UM coverage of $100,000.
[2] Hartford Southeast conceded that coverage was provided under the CGL policy if the cotton trailer itself was defective and that defect caused the accident. Although the court initially found coverage on the basis of evidence that the trailer was "swaying" at the time of the accident, it later clarified in oral reasons that it found no evidence of any defect in the trailer.
[3] In Willett, the accident happened in Louisiana, the plaintiffs were driving a borrowed Louisiana vehicle, and both the driver and the owner of the eighteen-wheeler which rearended the plaintiffs were Louisiana residents. The plaintiffs' UM policy was written, issued and delivered in New Hampshire and covered a vehicle principally garaged in New Hampshire.
[4] The accident in Anderson occurred in Louisiana, and the tortfeasor's insurer paid its policy limits and was dismissed from the suit. At issue before the court was the UM coverage afforded to the plaintiff, a Texas resident. The rig driven by the plaintiff was owned by a Texas resident and leased to a Georgia common carrier. The court found that the policy was negotiated, issued, and delivered outside of Louisiana and that Louisiana had no compelling interest that would override application of Georgia law to its contracts.
[5] See also Aucoin v. Lafayette Insurance Company, 99-1391 (La.App. 3rd Cir. 2/16/00), ___ So.2d ___, 2000 WL 175250.