786 So.2d 306 (2001)
Sandra MONTGOMERY and Frederick Montgomery, Individually and as Natural Tutor of the Minor, Shameka Montgomery, Plaintiffs-Appellants,
v.
FARMERS TEXAS COUNTY INSURANCE COMPANY, Fred J. Wilkinson and State Farm Mutual Automobile Insurance Company, Defendant-Appellee.
No. 34,628-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*307 Neblett, Beard & Arsenault by Edward E. Roberts, III, Wesley J. Gralapp, Alexandria, Counsel for Appellants.
Casten & Pearce, APLC by Layne A. Clark, Jr., Theodore J. Casten, Shreveport, Counsel for Appellee.
Wilkinson, Carmody & Gilliam by Bobby Gilliam, Shreveport, Counsel for Farmers Texas County Insurance Company and Fred J. Wilkinson.
Before STEWART, GASKINS and KOSTELKA, JJ.
KOSTELKA, J.
Sandra Montgomery (referred to individually as "Montgomery") and her husband, Frederick Montgomery, both individually and as natural tutor of the minor child, Shameka Montgomery (collectively referred to as "Appellants"), appeal the First Judicial District Court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") dismissing Appellants' claims against State Farm. Finding no error by the trial court, we affirm.

FACTS
On August 2, 1997 in the westbound lane of 1-20 in Shreveport, Louisiana, a motor vehicle accident occurred which involved five vehiclesthree motorcycles and two automobiles. At the time of the accident, the three motorcycles were parked on the shoulder of I-20. Montgomery was a guest passenger on one of the motorcycles. The truck driven by Fred Wilkinson ("Wilkinson") collided with a car driven by Mary Ann Redmon ("Redmon") and then struck the motorcycles injuring Montgomery.
Appellants filed suit, initially naming as defendants Wilkinson and his insurer. Subsequently, Appellants filed their amended petition adding State Farm as Montgomery's uninsured/underinsured insurance carrier. State Farm filed its motion for summary judgment claiming that Arkansas law governs this controversy, because Montgomery, an Arkansas resident, obtained an insurance policy through State Farm in Arkansas for a vehicle she owned and garaged in Arkansas. The motion further claimed that Montgomery's rejection of uninsured/underinsured motorist coverage in her policy was valid. The trial court ruled that Arkansas law was applicable to this case and granted State Farm's motion for summary judgment. This appeal ensued.

DISCUSSION
Appellants raise several related assignments of error, the gravamen of which is that the trial court erred in holding that Arkansas law, not Louisiana law, applied in determining the validity of the uninsured/ underinsured insurance rejection form signed by Montgomery. Appellants concede that the State Farm rejection form is valid under Arkansas law.
When determining a conflict-of-laws issue, it is more appropriate to conduct a full analysis of the conflict-of-laws principles involved than to merely rely upon La. R.S. 22:1406(D)(1)(a)(iii).[1]Adams v. Thomason, 32-728 (La.App.2d Cir.03/01/00), 753 So.2d 416, 426, writ denied, 00-1221 (La.06/16/00), 764 So.2d 965. *308 Conflict-of-laws provisions are set forth in our Civil Code, and they provide guidance as to which state's law should apply.
The general rule governing conflict of laws is found at La. C.C. 3515, which states, as follows:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
The more specific conflict-of-laws rule in respect to conventional obligations is found at La. C.C. art. 3537, which states as follows:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
These two articles are intended to be read together. See, La. C.C. art. 3537, Comment (c); Sentilles Optical Services, Div. of Senasco, Inc. v. Phillips, 26,594 (La.App.2d Cir.03/01/95), 651 So.2d 395.
In this case, the trial court considered the interest Arkansas has in regulating insurance in accordance with the laws of that state. It further noted the minimum contacts to this state. Making those considerations, it determined that Arkansas law should apply to this case, and that State Farm was entitled to judgment as a matter of law. We agree with the trial court.
Appellants argue that when a conflict-oflaws analysis is conducted under the facts of this case, Louisiana law should prevail as the applicable law. In support of their argument, they rely on Adams, supra, where this court concluded Louisiana law was the applicable law although the insurance policy there was written in Wisconsin and the insured was a Wisconsin resident. However, the Louisiana contacts in Adams were extensive. Although the Adams insured was a Wisconsin resident, he had been working in Louisiana for a period of time. Further, the accident at issue occurred in Louisiana, and several Louisiana residents were involved in and affected by the accident, including the plaintiff, the driver of the truck which hit the plaintiff, and the owner of that truck. Based on those extensive contacts, we applied our state's law, determining that Louisiana had compelling interests that superseded those of Wisconsin, which interests clearly would have been adversely *309 affected if Louisiana law were not applied. Id. at 428.
Such is not the case here, where only minimal contacts to Louisiana exist. Montgomery, State Farm's insured, was a resident of Arkansas, as were her husband and child. The policy was delivered in Arkansas by an Arkansas agent and premiums were paid in that state. The insured vehicle, which was not involved in the accident in question, was garaged in Arkansas. Although there is an assertion that the tort-feasor was a Louisiana resident, he was sued as a Texas resident and served in Texas pursuant to Louisiana's statute allowing long-arm service of process.
Whereas the Arkansas contacts are extensive, the Louisiana contacts are slight in contrast to Adams. Here, the Appellants point to only Redmon as being a Louisiana resident, and neither she nor her insurer is a party to this litigation. Considering that she has no contact to this case and will not be affected by the disposition, her contact to Louisiana is of no value in determining the choice of law. Additionally, Appellants argue that a contact to Louisiana arises by virtue of the unpaid medical-related bills of Montgomery (most notably to Louisiana State University Medical Center which has a lien against any recovery by Montgomery). The accident at issue happened to occur in Louisiana and that is the only viable contact with Louisiana in this case. However, we do not believe that interest is sufficient to override the compelling interest Arkansas has in regulating insurance contracts written in that state and issued to Arkansas residents concerning a vehicle garaged in Arkansas which was not involved in the subject accident. Moreover, although the Appellants imply that the medical providers will go unpaid if State Farm prevails, we note that even if the claims against State Farm are dismissed, the medical providers still have a legal remedy against Montgomery outside of this litigation.
Although Appellants argue otherwise, the trial court's application of and reliance on Holcomb v. Universal Ins. Co., 93-1424 (La.App. 3d Cir.06/01/94), 640 So.2d 718, writ denied, 94-1740 (La.10/07/94), 644 So.2d 643 was correct. The facts of that case are more factually analogous to the facts of the case sub judice than were the facts in Adams. In Holcomb, as here, the contacts with Louisiana were slight, those being only the tort-feasor (released by virtue of a previous settlement) and the site of the accident. The Holcomb court noted that no Louisiana resident or company was a party to the action. Moreover, it determined that "the application of Louisiana law in this case would, in our opinion, impinge on the State of Arkansas' right to regulate the insurance industry in that state." Holcomb, 640 So.2d at 722. This is the same conclusion drawn by the trial court, which we deem correct as to this case.
Additionally, we note that Comment (c) to Article 3537 states as follows:
[T]he objective [in applying the dictates of Articles 3515 and 3537] is to identify "the state whose policies would be most seriously impaired", [sic] that is, the state that, in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences "if its law were not applied" to the issue at hand. As envisioned by this Article, the search for the applicable law should not be a mechanical, quantitative process, but should be based on an objective and impartial evaluation of the consequences of the choice-of-law decision on each of the involved states with a view towards accommodating their respective *310 interests rather than selfishly promoting the interests of one state at the expense of the others. (Emphasis added).
In reaching our determination, we note that clearly, the interest of Arkansas in regulating its own insurance industry is great. The Arkansas legislature has presumably promulgated rules and regulations aimed toward that industry. In that vein, Arkansas has an interest in seeing that her laws are applied to those contracts which are negotiated in Arkansas. Specifically, where insurance policies are at issue, insurers conducting business in that state do so accepting a risk of loss under the laws of Arkansas. It would appear that, absent sufficient contacts with Louisiana, Arkansas would suffer "the most serious legal, social, [and] economic" consequences of the two states. Given the Louisiana contacts that Appellants urge exist in this case, it would appear that the only consequence suffered by the state of Louisiana if Arkansas law is applied would be the possible inability of the medical providers to collect their outstanding bills out of the damages collected if judgment was rendered in the Appellants' favor. Such an interest to Louisiana is minimal in comparison to the interest of Arkansas. We note that, under Appellants' argument, Louisiana would be providing Montgomery more insurance coverage than she provided for herself in her Arkansas insurance contract.
Finally, in brief Appellants argue that even if Arkansas law is applied to this controversy, the rejection form is vague and ambiguous and is, therefore, invalid. However, at oral argument before this court, Appellants conceded that the State Farm selection/rejection form presented Montgomery, which outlined her options regarding uninsured and underinsured motorist coverage, met the requirements dictated by Arkansas law; therefore, that assignment of error need not be addressed.

CONCLUSION
For these reasons, we conclude that the judgment of the trial court was correct and is, therefore, affirmed. Costs of this appeal are assessed to the Appellants.
AFFIRMED.
NOTES
[1] La. R.S. 22:1406(D)(1)(a)(iii) states: "This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."