890 So.2d 747 (2004)
Randall J. RAINS, et al, Plaintiffs-Appellants
v.
Dustin L. JONES, et al, Defendants-Appellees.
No. 39,977-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 2004.
*748 The Law Offices of Jack M. Bailey, by J. Allen Cooper, Jr., for Appellants Randall J. Rains and Camille M. Rains.
Klotz, Simmons & Brainard, by Harry D. Simmons, Shreveport, B. Trey Morris, for Appellee United Services Automobile Association.
Seabaugh & Keele Counsel, by Alan T. Seabaugh, Shreveport, for Appellees State Farm Mutual Automobile Ins. Co., Dustin L. Jones and Darrell L. Jones.
Barnes & Green, by Donna P. Green, for Appellee Royal Ins. Co.
Before STEWART, CARAWAY and MOORE, JJ.
STEWART, J.
Randall and Camille Rains appeal the trial court's grant of summary judgment in favor of their automobile liability insurer, United Services Automobile Association ("USAA"), dismissing, with prejudice, their claims for underinsured motorist ("UM") coverage under their policy issued in Missouri. For the reasons expressed herein, we affirm.

FACTS
On November 25, 1998, while on their honeymoon, Randall and Camille Rains ("the Rainses") stopped by Barksdale Air Force Base in Bossier City Louisiana for business purposes. At the time, Randall, a Major in the United States Air Force, was stationed in Missouri via military orders, but he was domiciled in Washington. After leaving the base in their rental vehicle, the couple traveled west, eventually stopping behind a vehicle at a traffic signal at a south Shreveport intersection. While waiting there, the Rainses were rear-ended by a pickup truck driven by Dustin Jones, a Louisiana minor. The force of the impact pushed their vehicle into the sports utility vehicle stopped in front of them and occupied by Louisiana residents. Both Randall and Camille sustained injuries from the mishap.
On November 16, 1999, the Rainses instituted suit against Dustin Jones and his father, Darrell Jones, and their automobile liability insurer, State Farm Mutual Automobile Insurance Co. ("State Farm"). At the time of the accident, Jones had liability coverage of $50,000/100,000. Additionally, USAA was named in the suit as the Rainses' uninsured/underinsured motorist insurer. In the insurance policy issued and delivered in Missouri, the Rainses selected uninsured motorist coverage of $25,000/50,000 (the minimum liability coverage allowed by Missouri law), but rejected underinsurance coverage.
On December 10, 2003, USAA sought a summary judgment seeking to be dismissed from the suit. USAA argued that under the Louisiana uninsured motorist law, specifically, La. R.S. 22:1406 D, a conflict of law analysis was required to determine whether Louisiana or Missouri law applied to the interpretation of the Rainses' policy. USAA contended that under that analysis, Missouri law should apply. USAA further urged that the policy clearly defined an "uninsured" motor vehicle as one which was insured for less than the minimum liability limits required under Missouri law. Because Jones had coverage in amounts greater than the Missouri *749 minimum liability limits, USAA argued that the Rainses could not take advantage of their uninsured coverage. Moreover, USAA argued that underinsurance coverage was excluded from the Rainses' policy.
In opposition, the Rainses argued that for various reasons, the clear language of La. R.S. 22:1406 D(1)(a)(iii) automatically applied Louisiana's uninsured motorist law to any accident which involved a resident of this state. Alternatively, the Rainses proposed that even if the court employed a conflict of law analysis, Louisiana law should be applied. Included in that argument was a reference to an out of state coverage provision in the liability portion of the policy which the Rainses argued clearly provided for the application of Louisiana law.
After a hearing, the trial court granted summary judgment in favor of USAA, dismissing all claims by the Rainses with prejudice. This appeal ensued.

DISCUSSION

Summary Judgment
A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B. This article was amended in 1996 to provide that the summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966A(2); Racine v. Moon's Towing, 01-2837 (La.5/14/02), 817 So.2d 21. In 1997, the legislature enacted C.C.P. art. 966C(2), which further clarified the burden of proof in summary judgment proceedings. This provision first places the burden of producing evidence for summary judgment on the mover (normally the defendant), who can ordinarily meet the burden by submitting affidavits or by pointing out the lack of factual support for an essential element of the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Racine, supra, citing Frank L. Maraist and Harry T. Lemmon, Louisiana Civil Law Treatise: Civil Procedure § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Racine, supra. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Gray v. Investment Cars Unlimited, Inc., 36,691 (La.App.2d Cir.1/29/03), 836 So.2d 1184, writ denied, 03-0670 (La.5/2/03), 842 So.2d 1108.

Insurance Coverage
An insurance policy is a contract between the parties and should be construed employing the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties' intent, as reflected by the words of the policy, determines the extent of coverage. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as *750 to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Interstate, supra; Reynolds, supra.

Policy Provisions
The relevant policy provisions include the referenced "Out of State" provision contained in the PartA  Liability Coverage portion of the policy. Specifically that paragraph reads as follows:
OUT OF STATE COVERAGE
If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, your policy will provide at least the minimum amounts and types of coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.
Part C of the policy addresses UM coverage and defines uninsured and underinsured motor vehicles in pertinent part as follows:
B. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
1. To which no liability bond or policy applies at the time of the accident.
2. To which a liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for liability specified by Missouri financial responsibility law.
* * *
C. Underinsured motor vehicle means a land motor vehicle or trailer of any type to which a liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is less than the limit of liability for this coverage.
However, underinsured motor vehicle does not include an uninsured motor vehicle.

Conflict of Laws
On appeal, the Rainses assert that the trial court failed in its conflict of laws analysis by determining that Missouri law applied instead of Louisiana law. In conducting this analysis, courts have looked to La. R.S. 22:1406(D)(1)(a)(iii) which states, "this Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." However, at the outset, we note that when determining a conflict-of-laws issue, it is more appropriate to conduct a full analysis of the conflict-of-laws principles involved than to merely rely upon La. R.S. 22:1406(D)(1)(a)(iii). Adams v. Thomason, 32-728 (La.App.2d Cir.03/01/00), 753 So.2d 416, 426, writ denied, 00-1221 (La.06/16/00), 764 So.2d 965.
Moreover, conflict-of-laws provisions are set forth in our Civil Code, and they provide guidance as to which state's law should apply. The general rule governing conflict of laws is found at La. C.C. art. 3515, which states, as follows:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate *751 and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
The more specific conflict-of-laws rule in respect to conventional obligations is found at La. C.C. art. 3537, which states as follows:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.
These two articles are intended to be read together. See, La. C.C. art. 3537, Comment (c); Sentilles Optical Services, Div. of Senasco, Inc. v. Phillips, 26,594 (La.App.2d Cir.03/01/95), 651 So.2d 395.
In this case, the trial court considered the interest Missouri has in regulating insurance in accordance with the laws of that state. It further noted the minimum contacts to this state. Making those considerations, it determined that Missouri law should apply to this case, and that USAA was entitled to summary judgment as a matter of law. We agree with the trial court.
Appellants argue that when a conflict-of-laws analysis is conducted under the facts of this case, Louisiana law should prevail as the applicable law. In support of their argument, they rely on Adams, supra, where this court concluded Louisiana law was the applicable law although the insurance policy there was written in Wisconsin and the insured was a Wisconsin resident. However, the Louisiana contacts in Adams were extensive. Although the insured party in Adams was a Wisconsin resident, he had been working in Louisiana for a period of time. Further, the accident at issue occurred in Louisiana, and several Louisiana residents were involved in and affected by the accident, including the plaintiff, the driver of the truck which hit the plaintiff, and the owner of that truck. Based on those extensive contacts, we applied our state's law, determining that Louisiana had compelling interests that superseded those of Wisconsin, which interests clearly would have been adversely affected if Louisiana law were not applied. Adams, supra at 428.
In this case, the Rainses purchased limited UM coverage in the Missouri policy. The Rainses and USAA did not have contractual expectations that Louisiana's or any other state's UM law would be imposed upon their Missouri contract, changing their mutual intent on that subject. Many courts of appeal rulings in this state, employing a conflicts of law analysis, have held that these important Missouri contacts and policy concerns outweigh the Louisiana contacts created merely by the fortuity of the accident in this state. Zuviceh v. Nationwide Ins. Co., 00-733 (La.App. 1 Cir. 5/11/01), 786 So.2d 340; Holcomb v. Universal Ins. Co., 640 So.2d 718 (La.App. 3d Cir.1994), writ denied, 644 *752 So.2d 643 (La.1994); Anderson v. Oliver, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434; and Montgomery v. Farmers Texas County Ins. Co., 34,628 (La.App.2d Cir.5/9/01), 786 So.2d 306.
Furthermore, the out of state provisions in the policy do not govern UM coverage. The out of state provision is clearly contained in Part A of the subject policy dealing with liability coverage. Part C is the section of the policy which addresses uninsured/underinsured motorist coverage and contains no such provision. From the placement of these provisions in the policy it becomes obvious that the redactors of the document intended that the out of state provision apply only to liability coverage. On these grounds, we find this portion of the Rainses' argument to be without merit.
We also reject the remaining arguments raised by the Rainses. Before the enactment of La. R.S. 22:1406 D(1)(a)(iii), the Louisiana Supreme Court held that 1406(D)(1) did not affect polices written and delivered in other states covering vehicles garaged or registered in other states, even if such vehicles were involved in Louisiana accidents with Louisiana residents. Snider v. Murray, 461 So.2d 1051 (La.1985). In Snider, a fatally injured motorist was domiciled in Louisiana but ha a policy of insurance issued and delivered in Texas. The court interpreted 1406D(1) as expressly purporting to affect "only" an automobile policy delivered or issued in Louisiana. Because the motorist's policy was issued in Texas, the court held that his heirs could not avail themselves of 1406D to impose Louisiana's uninsured motorist requirements upon the Texas policy. The court invited legislative intervention as follows:
Perhaps the Legislature could have enacted a law which under modern conflict of laws theories would affect insurance policies written in other states when the accident occurs in Louisiana, but the Legislature did not include such a provision in La. R.S. 22:1406 D(1).
In accordance with Snider's holding, therefore, the Rainses cannot avail themselves of 22:1406 D to utilize Louisiana's uninsured motorist requirements upon their Missouri policy. The trial court correctly concluded that Missiouri law applies. Therefore, the appellants' arguments are without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
I respectfully concur with the result of the majority opinion.
A conflict of laws does not automatically arise merely because the transactional contacts of a conflict involve different states. Before Article 14 of the Civil Code refers us to Book IV of the Code for conflict of laws analysis, it advises that no conflict analysis is necessary if "otherwise expressly provided by the law of this state." La. C.C. art. 14. The Louisiana law at issue, in this case our UM Statute (La. R.S. 22:1406D), will therefore fall into one of three categories. In Category One, the Louisiana statute will expressly limit its application to a situation involving essential Louisiana contacts only. This is an express choice-of-law rule eliminating analysis under Book IV, where the legislature has indicated that its regulation and policy (in the present case regarding insurance contracts) are not to extend to settings *753 where those essential contacts occur elsewhere. In Category Two, the legislature does the opposite by expressly pronouncing broad application of the statute's regulation and policy to any situation with even a minimal Louisiana connexity. This is also a specific choice-of-law by the legislature that Louisiana law shall apply and no conflicts analysis under Book IV is appropriate. Last, in Category Three, the Louisiana statute gives no clear indication how it might apply to dispute settings involving contacts with multiple states; therefore, Book IV of the Civil Code applies to determine the choice-of-law between the Louisiana law and other states' laws which might best resolve the controversy with the least impairment of the interests of all states.
The majority now places our UM Statute in Category Three after its amendment in 1987 [La. R.S. 22:1406D(1)(a)(iii), hereinafter Subsection D(1)(a)(iii)] and goes through the weighing process of the conflict of laws analysis under Book IV to determine that Missouri law and not the UM Statute applies. This approach follows other court of appeal decisions on this issue in the first, second and third circuits. Zuviceh v. Nationwide Ins. Co., 00-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340, writ denied, 01-2141 (La.11/9/01), 801 So.2d 373; Montgomery v. Farmers Texas County Ins. Co., 34,628 (La.App.2d Cir.5/9/01), 786 So.2d 306; Holcomb v. Universal Ins. Co., 640 So.2d 718 (La.App. 3d Cir.1994), writ denied, 644 So.2d 643 (La.1994); Anderson v. Oliver, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301, writ denied, 98-0755 (La.5/8/98), 718 So.2d 434.
In contrast, the fourth and fifth circuits place the UM Statute in Category Two. Dekeyser v. Automotive Casualty Ins. Co., 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676; Drew v. Martello, 98-1141 (La.App. 5th Cir.2/23/99), 729 So.2d 90. These courts hold that Subsection D(1)(a)(iii) represents an ironclad choice-of-law reflecting the legislature's intent to apply our UM law to all insurance contracts nationwide so long as the insured has an accident in Louisiana and the accident involves a Louisiana resident.
A review of many of these cases by a distinguished law professor concluded that the language of Subsection D(1)(a)(iii), standing alone, creates a Category Two specific choice-of-law rule requiring application of Louisiana UM law to situations such as the present. Russell J. Weintraub, Conflict of Laws, Comparative Law and Civil Law: A Tribute to Symeon c. Symeonides, 60 La. L.Rev. 1365, 1371-1373 (2000). The professor, however, was not employing statutory interpretation of the entire UM Statute. His topic being conflict of laws, he merely accepted all five circuits' assessment that Subsection D(1)(a)(iii) was the only choice-of-law indication in the UM Statute.
I do not accept that assessment of our UM Statute by the five circuits post-1987, but choose to rest on the strength of the last ruling by our highest court on this subject. In Snider v. Murray, 461 So.2d 1051 (La.1985), the Supreme Court gave statutory interpretation to crucial language in the UM Statute which remains unchanged in the law today. In doing so, the court rejected this court's conflict of laws analysis which it attempted to conduct in Snider. The crucial provisions interpreted in Snider are:
(i) "The following provisions shall govern the issuance of uninsured motorist coverage in this state," (preamble to Subsection D), and
(ii) "No automobile liability insurance ... shall be delivered or issued for delivery in this state with respect to any motor vehicle ... required to be registered in this state...." without *754 the application of UM coverage. [Subsection D(1)(a)(i)]
This specific language of the Statute convinced the court in Snider that Louisiana's UM law did not apply to a policy of insurance issued and delivered in Texas to a Texas domiciliary for his vehicle which was principally garaged in Texas. The ruling was made despite the fact that at the time of the accident, which occurred in Louisiana, the insured had become domiciled in Louisiana. The court quoted at great length with approval the interpretation of the Statute employed in the case of Abel v. White, 430 So.2d 202 (La.App. 4th Cir.1983). That court, after examining the above quoted statutory provisions, concluded that our UM law only "applies to policies delivered in Louisiana to insure vehicles registered or garaged in Louisiana." Id. at 1053. Regarding the question of choice-of-law, the Abel court found, and Snider reaffirmed, the following:
Whether or not the choice of law rule derivable from C.C. 10, 2d para., would allow Louisiana law to impose uninsured and underinsured motorist coverage upon out-of-state insurance policies, Louisiana law does not do so.

Snider, supra at 1053 quoting Abel v. White, supra (emphasis supplied). In other words, our highest court placed the UM Statute in Category One and found that there is no conflict of laws in these cases involving out-of-state policies because our UM Statute expressly limits its application to policies "issued" in this state for vehicles "registered" in this state.
The criterion for local policy "issuance" for "registered" Louisiana vehicles remains unchanged in the Statute today. Therefore, the statutory interpretation of Snider still applies unless the language of the 1987 amendment adding Subsection D(1)(a)(iii) somehow negates the "issuance" test which exempts the Statute's application to policies issued outside this state on out-of-state vehicles. The language of Subsection D(1)(a)(iii), however, does not withdraw the statutory force of the local policy "issuance" and "registered" vehicle requirements of the Statute. It merely states in broad general language that the Louisiana "requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state."
In considering whether this 1987 amendment to the Statute addressed and abolished the local policy issuance criterion, a notation in the Snider ruling is telling. In footnote 4, the Snider court observed:
La. R.S. 22:1406 D(1) may be contrasted to the Direct Action Statute, La. R.S. 22:655, which confers a right of direct action against an insurer on an insurance policy (1) when the policy was issued or delivered in Louisiana or (2) when the accident or injury occurred in Louisiana "whether the policy of insurance sued upon was written or delivered within the State of Louisiana or not". La. R.S. 22:1406 D(1) by its terms does not apply unless the policy was delivered or issued for delivery in this state, regardless of where the accident occurred.
Id. at 1054. While the Snider court mentioned that the legislature might impose Louisiana's UM protection upon insurance policies written in other states and gave footnote 4 as an example for amending the Statute, the two new criteria of Subsection D(1)(a)(iii) regarding a Louisiana accident and the involvement of a Louisiana resident do not directly withdraw nor contradict the existing test for local issuance of *755 policies for Louisiana registered vehicles.[1]
Following the 1987 amendment, most decisions, including the present majority ruling, have forgotten the first step for statutory construction of the UM Statute as employed in Snider and have merely assumed that Subsection D(1)(a)(iii) placed the UM Statute in either Category Two or Three, legislatively overruling Snider. In one of those rulings, however, the First Circuit Court of Appeal, in Zuviceh, supra, did conduct a statutory interpretation of the entire UM law to determine if Snider had been overruled. The court found:
The introductory paragraph of LSA-R.S. 22:1406(D) states unqualifiedly that the provisions enumerated thereafter apply to policies issued in Louisiana. The Legislature did not change that qualification by amending the statute to include the language of LSA-R.S. 22:1406(D)(1)(a)(iii). As it is written, the amendment, which is one of the "following provisions" referred to in LSA-R.S. 22:1406(D), governs the issuance of UM coverage in Louisiana.
* * *
Reading LSA-R.S. 22:1406 in its entirety, there is but one conclusion: its provisions `govern the issuance of uninsured motorist coverage in this state.' Because the policy under consideration was issued in Mississippi as opposed to Louisiana, subparagraph D(1)(a)(iii) has no application. We are aware of no jurisprudence which has addressed this language of this statute, but we believe the language of the statute is dispositive of the issue.
Id. at 344-345, emphasis in original.[2]
Zuviceh's statutory construction of the non-effect of Subsection D(1)(a)(iii) upon the local issuance criterion of the UM Statute is imminently correct. From the language of the Statute read in its entirety, Louisiana has not chosen to regulate the justified expectations of parties to insurance policies issued in other states. Thus, there is no conflict of Louisiana's UM law with any other state's law governing the issuance of policies in such state. This was the ruling in Snider, and Zuviceh correctly found that the amendment to the law after Snider in the form of Subsection D(1)(a)(iii) was itself only applicable to a Louisiana issued policy.
In this case, the Rainses purchased limited UM coverage in their Missouri policy. The Rainses and USAA did not have contractual expectations that Louisiana's or *756 any other state's UM law would be imposed upon their Missouri contract, changing their mutual intent on that subject. The majority ruling, employing a conflict of laws analysis, holds that these important Missouri contacts and policy concerns outweigh the Louisiana contacts created merely by the fortuity of the accident in this state. While reaching the right result, the opinion has found conflict of laws that does not exist. Our UM law expressly avoids any conflict of laws by its requirement for the issuance of the policy in this state upon locally registered vehicles.
NOTES
[1] Interestingly, all of the courts of appeal rulings cited in this opinion relying on Subsection D(1)(a)(iii) have not interpreted the phrase "involves a resident of this state." If that subsection was intended to overrule Snider, which I reject, the subject phrase can be narrowly interpreted to require that the party to whom our UM policy concerns are directed, the insured/UM claimant, be a Louisiana resident at the time of the accident, as was the specific case in Snider.
[2] Inexplicably, after reaching the above quoted conclusion from its statutory construction that the UM Statute has no application to policies issued in other states, the Zuviceh court then proceeded to a conflict of laws analysis to determine whether Louisiana's UM law or Mississippi law should govern the Mississippi-issued policy. The court concluded that factual contacts with Louisiana because of the chance occurrence of the accident in Louisiana did not outweigh the primary fact that "the application of Louisiana law to the policy would result in the abrogation of a Mississippi contract." Zuviceh, supra at 348. It is that freedom of contract and the comity for property rights contractually confected in other states that has already led the legislation to make a choice of law that Louisiana's UM policy only applies to policies issued in this state. Therefore, the exercise for conflict of laws analysis in Zuviceh and in the majority ruling herein is unnecessary.