954 So.2d 847 (2007)
Jerry WALKER on Behalf of His Minor Child, Brandon Thompson WALKER, Plaintiff-Appellee
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 42,051-CA.
Court of Appeal of Louisiana, Second Circuit.
April 4, 2007.
*849 Casten & Pearce, by Marshall R. Pearce, Shreveport, for Appellant.
Wade Visconte, Shreveport, The Law Office of Kirby D. Kelly, by H. Dean Lucius, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
MOORE, J.
State Farm, the UM carrier for plaintiff Jerry Walker, appeals a summary judgment finding that Louisiana law applied to the claim and that State Farm's UM policy provided coverage despite its "anti-stacking" provision. We reverse and render.

Procedural Background
The accident occurred on July 13, 2004. Eleven-year-old Brandon Walker was riding as a passenger in Charles Cleveland's 2003 Chevy Impala. Cleveland was driving north on Hwy. 71 in north Caddo Parish when Michelle Thomas, driving south in her 2001 Honda Civic, tried to pass an 18-wheeler. She failed to negotiate the pass and instead collided head-on with the Impala. Brandon was seriously injured.
Brandon, his father Jerry Walker, and Cleveland are all residents of Texarkana, Arkansas. Both the Walkers and Cleveland had auto insurance policies, with UM coverage, issued in Arkansas. The record does not disclose where Ms. Thomas lives.
Acting on behalf of his son, Jerry Walker settled with Cleveland's UM carrier, Progressive Insurance Co., for the policy limit of $100,000 plus $5,000 med-pay, and released those parties. He also settled with Ms. Thomas's liability carrier, Southern Farm Bureau, for $15,186.78 and released those parties.[1]
He then filed the instant suit in the First Judicial District Court against his own UM carrier, State Farm, for UM benefits, penalties and attorney fees. State Farm's UM limit was $25,000.
State Farm moved for summary judgment, contending that under Arkansas law, an insurer may preclude stacking of UM policies and that the policy issued to Walker did so, specifically and unambiguously:
If There Is Other Underinsured Motor Vehicle Coverage
1. If underinsured motor vehicle coverage for bodily injury is available to an insured from more than one policy provided by us or by any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability. This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.
2. Subject to item 1 above, any coverage applicable under this policy shall apply:
a. on a primary basis if the insured sustains bodily injury while occupying *850 your car, or while not occupying a motor vehicle or trailer.
b. on an excess basis if the insured sustains bodily injury while occupying a vehicle not owned by or leased to you, your spouse, or any relative. * * *
3. Subject to items 1 and 2 above, if this policy and one or more other policies provide coverage for bodily injury:

a. on a primary basis, * * *
b. on an excess basis, we are liable only for our share. Our share is that percent of the damages payable on an excess basis that the limit of liability of this policy bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis.
(Policy Pages 17-18; defined terms emphasized in the original). In support, it attached a certified copy of the policy.
Walker filed his own motion for summary judgment, contending that under the choice-of-law analysis of La. C.C. arts. 3515 and 3537, Louisiana law applied. He conceded that Louisiana law generally prohibits recovering damages from more than one UM policy, but the guest passenger exception of La. R.S. 22:680(1)(c)(i, ii) permitted it in this case. Alternatively, he contended that even under Arkansas law, State Farm's anti-stacking provision was unenforceable because it was ambiguous, conflicting and against public policy. In support, he attached certified copies of the release executed with Ms. Thomas and her insurer, as well as Brandon's medical records.
The parties submitted the matter on briefs. The court stated on the record that Walker "obtained payment from the alleged tortfeasor and a partial payment from an uninsured motorist or underinsured motorist and seeks in effect to stack uninsured motorist coverage."[2] Further, "Louisiana law applies to this particular controversy and * * * as State Farm provides uninsured or underinsured protection[,] the plaintiff's motion for summary judgment is granted." Finally, "The defendant's motion for summary judgment is denied for the same reason; that is, that Louisiana applies, the Louisiana law provides for stacking under these circumstances of underinsured or uninsured motorist coverage." Despite State Farm's request pursuant to La. C.C.P. art. 1917, the court declined to give reasons for these conclusions. The court rendered judgment granting Walker's motion and denying State Farm's, and certified it as immediately appealable.
State Farm has appealed, urging by two assignments of error that the district court erred in applying Louisiana law; alternatively, it argues that even if Louisiana law applies, it does not require stacking.

Standard of Review
Appellate courts review summary judgments de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Hill v. Shelter Mutual Ins. Co., XXXX-XXXX (La.7/10/06), 935 So.2d 691. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. The interpretation of an insurance contract is usually a legal question that can be properly resolved by motion for summary judgment. *851 Robinson v. Heard, XXXX-XXXX (La.2/26/02), 809 So.2d 943.

Discussion: Comparison of UM Laws
By its first assignment of error, State Farm urges the district court erred in applying Louisiana law to an Arkansas automobile insurance policy providing uninsured and underinsured motorist coverage to an Arkansas resident involved in an accident in Louisiana. It contends that there is a genuine difference between the UM laws of Louisiana and Arkansas, and that under the factors of La. C.C. arts. 3515 and 3537, Arkansas's interests would be more seriously impaired should its laws not be applied. It cites numerous cases in which out-of-state plaintiffs, with insurance policies issued in their home states, were injured in auto accidents in Louisiana and made claims on their UM provisions; most often, the courts have applied the other state's law to the claim. See, e.g., Champagne v. Ward, XXXX-XXXX (La.1/19/05), 893 So.2d 773. Finally, it submits that Louisiana's policy interests have been mitigated since Walker recovered and settled with the tortfeasor and collected UM policy limits from his host driver.
Walker responds that Louisiana has a strong public policy to promote full recovery for innocent victims of auto accidents on its highways by mandating liability coverage and making UM coverage available. Martin v. Champion Ins. Co., 95-0030 (La.6/30/95), 656 So.2d 991. He contends that with this strong public policy and numerous factual connections between the accident and the state, Louisiana's interests would be most seriously impaired were its law not applied.
In Champagne v. Ward, supra, the supreme court held that the starting point in a multistate case was first to determine whether there was a difference between Louisiana's UM law and that of the other state and then to determine which state's law applied by employing the choice-of-law methodology codified in C.C. arts. 3515 and 3537.
The Arkansas statute regulating the provision of underinsured motorist coverage, A.C.A. § 23-89-209, is silent on the issue of stacking. Ross v. United Services Auto. Ass'n, 320 Ark. 604, 899 S.W.2d 53 (1995). Although stacking of UM coverages is not prohibited by statute, it may be precluded by an applicable anti-stacking clause in the policy. Kanning v. Allstate Ins. Cos., 67 Ark.App. 135, 992 S.W.2d 831 (1999); Whitney v. Shelter Mutual Ins., 383 F.Supp.2d 1112 (W.D.Ark.2004). Arkansas public policy does not favor stacking. Chamberlin v. State Farm Mut. Auto. Ins. Co., 343 Ark. 392, 36 S.W.3d 281 (2001). The availability of stacking is purely a matter of reading the contract to determine its contents. Whitney v. Shelter Mutual Ins., supra. The policy provision quoted above would appear to prohibit stacking in this case.
The Louisiana statute mandating uninsured motorist coverage, La. R.S. 22:680, specifically addresses stacking:
(1)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following:

*852 (ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
In short, Louisiana law generally prohibits stacking; an exception applies, however, under Subparagraph (1)(c)(ii), if the injured party was occupying a vehicle not owned by him, his resident spouse or resident relative, there was UM coverage (primary) on the occupied vehicle, and at least one other UM coverage was available to the injured party who has not yet been fully compensated for his damages. See William Shelby McKenzie and H. Alston Johnson III, Insurance Law and Practice, 3 ed. (Thomson/West ©2006), § 122. In short, the exception to the general anti-stacking provision would appear to apply to Brandon and permit him to stack the State Farm UM provision.
State Farm contends that another provision of R.S. 22:680 negates the application of this exception because the accident did not involve a resident of Louisiana:
(1)(a)(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
This provision, however, applies only to "This Subparagraph," which obviously refers to Subparagraph (1)(a) of Section 680. Had the legislature intended the residency requirement to apply to the portion of the statute designated as (1)(c), it would have referred to "This Subsection." We do not find that the residency requirement of (1)(a)(iii) negates the anti-stacking exclusion provided by (1)(c)(i).
Because Arkansas law would prohibit stacking and Louisiana law would allow it in this case, we must conduct a choice-of-law analysis.

Choice of Law
An issue in a case having contacts with other states is governed by the law of the state "whose policies would be most seriously impaired if its laws were not applied to that issue." La. C.C. arts. 3515, 3537. Article 3515 states the general rule of conflicts. Rains v. Jones, 38,977 (La. App. 2 Cir. 12/22/04), 890 So.2d 747, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 605. Article 3537 is more specific, pertaining to conventional obligations:
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multi-state commercial intercourse, and of protecting one party from undue imposition by another.
*853 Article 3537 has been applied to choice-of-law issues involving UM coverage. Champagne v. Ward, supra; Rains v. Jones, supra; Adams v. Thomason, 32,728 (La.App. 2 Cir. 3/1/00), 753 So.2d 416, writ denied, XXXX-XXXX (La.6/16/00), 764 So.2d 965.
The policies and interests of Louisiana differ from those of Arkansas in this case. Walker correctly argues that Louisiana jurisprudence expresses a strong public policy favoring full recovery by innocent victims of uninsured motorists. Champagne v. Ward, supra; Martin v. Champion Ins. Co., supra. However, Louisiana also recognizes the interest of other states in regulating their own insurance industries and related contractual obligations. Champagne v. Ward, supra; Montgomery v. Farmers Texas County Ins. Co., 34,628 (La.App. 2 Cir. 5/9/01), 786 So.2d 306; Zuviceh v. Nationwide Ins. Co., XXXX-XXXX (La.App. 1 Cir. 5/11/01), 786 So.2d 340, writ denied, 2001-2141 (La.11/9/01), 801 So.2d 373. As the court recognized in Champagne, "The integrity of the contract is a substantial and real interest. The fact that Congress has allowed fifty states to have their own uniform system of regulations governing insurance strongly suggests this is a legitimate public purpose." Champagne, supra, at p. 26, 893 So.2d at 788.
The contacts of Louisiana to the parties and the contract are tenuous at best. The accident obviously occurred in north Caddo Parish. However, both Brandon, the injured party, and Cleveland, his host driver, were residents of Arkansas. Both Cleveland's UM policy, written by Progressive Insurance, and Walker's, written by State Farm, were issued in Arkansas. This court has recognized that out-of-state drivers and their insurers do not change their mutual intent to be governed by the laws of their own states simply by the fortuity of suffering an accident while driving through Louisiana. Rains v. Jones, supra. In fact, most cases in which the only connection to Louisiana is the happenstance that the accident occurred here result in the application of the other state's law. Champagne v. Ward, supra; Rains v. Jones, supra, and the cases discussed therein; Zuviceh v. Nationwide Ins. Co., supra.
Walker argues that State Farm does business in Louisiana as well as Arkansas, and thus could reasonably expect that various Louisiana laws would be applied to its policies. Dunlap v. Hartford Ins. Co., XXXX-XXXX (La.App. 1 Cir. 3/24/05), 907 So.2d 122. Further, neither State Farm nor any major insurer could comply with the varying insurance laws of all 50 states; hence, the insurer must expect that its policy would be subject to interpretation under the law of any state in which an accident occurs. Boutte v. Fireman's Fund County Mut. Ins. Co., 2006-34 (La. App. 3 Cir. 5/10/06), 930 So.2d 305, writs denied, XXXX-XXXX, XXXX-XXXX (La.9/29/06), 937 So.2d 864. These cases, however, presented more compelling contacts between Louisiana and the parties: both plaintiffs were Louisiana residents making claims on UM policies affecting vehicles that were garaged in Louisiana. In fact, the Boutte court carefully distinguished the case from Champagne v. Ward, supra, on this basis. The same considerations simply are not present in the instant case.
Finally, Walker argues that other factors prove a strong contact between Louisiana and the case: Brandon received much of his medical care at LSU Health Sciences Center and Shriners' Hospital, and Walker applied to the First JDC for approval of Brandon's settlement. We note, however, that Walker already settled with both the liability carrier and with Cleveland's UM carrier. At least one *854 court has held that this circumstance mitigates Louisiana's interest in providing UM coverage for innocent accident victims. Palm v. Stewart, XXXX-XXXX (La.App. 3 Cir. 11/5/03), 858 So.2d 790. Walker's choice of healthcare providers for his son, and his selection of a Louisiana court to homologate a settlement, do not alter the finding under Art. 3537 that Arkansas's interests would be most seriously impaired if the State Farm policy were subjected to Louisiana law.
The district court erred in applying Louisiana law to the case.

Construction of the Policy
By its first assignment of error, State Farm further urges that its anti-stacking provision, quoted above, is clear and unambiguous. It submits that its own UM coverage was excess to the primary coverage afforded by Progressive and did not exceed Progressive's limit, so it (State Farm) has no further obligation.
Walker responds that the policy is ambiguous on various grounds and contrary to public policy; as a result, the anti-stacking provision cannot be enforced.
The Arkansas Supreme Court recently reiterated the rules applicable to the construction of insurance policies:
The law regarding the construction of an insurance contract is well settled. Once it is determined that coverage exists, it then must be determined whether the exclusionary language within the policy eliminates coverage. Norris v. State Farm Fire & Cas. Co., 341 Ark. 360, 16 S.W.3d 242 (2000). Exclusionary endorsements must adhere to the general requirements that the insurance terms must be expressed in clear and unambiguous language. Id. If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction. Elam v. First Unum Life Ins. Co., 346 Ark. 291, 57 S.W.3d 165 (2001). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. Id. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. Harasyn v. St. Paul Guardian Ins. Co., 349 Ark. 9, 75 S.W.3d 696 (2002). Whether the language of the policy is ambiguous is a question of law to be resolved by the court. Id. The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid. Southern Farm Bur. Cas. Ins. Co. v. Williams, 260 Ark. 659, 543 S.W.2d 467 (1976).
Castaneda v. Progressive Classic Ins. Co., 357 Ark. 345, at 351, 166 S.W.3d 556, at 560-561 (2004).
Moreover, as a general rule, the specific provisions of a contract control the general provisions. Taylor v. Hinkle, 360 Ark. 121, 200 S.W.3d 387 (2004); Dean v. Colonia Underwriters Ins. Co., 52 Ark. App. 91, 915 S.W.2d 728 (1996).
The "Other Underinsured" provision quoted above, ¶ 1, states that the "total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability." Further, "This is the most that will be paid regardless of the number of policies involved, persons covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident." Notably, Brandon has already received the highest UM limit available. Under ¶ 2(b), State Farm's coverage is clearly excess to that *855 of Progressive; under ¶ 3(b), State Farm's UM limit of $25,000 does not exceed Progressive's limit of $100,000. The only reasonable reading of these provisions is that State Farm will not stack its UM coverage in this case. This clear and unambiguous statement precluding the stacking of UM coverages is substantially similar to anti-stacking provisions upheld and applied in Shelter Mutual Ins. Co. v. Williams, 69 Ark.App. 35, 9 S.W.3d 545 (2000), and Barnhill v. Farm Bureau Mut. Ins. Co. of Ark., 12 Ark.App. 123, 671 S.W.2d 233, aff'd, 284 Ark. 219, 681 S.W.2d 341 (1984).
Walker argues that several other provisions of the policy conflict with this and mandate a finding of coverage. He first cites the "Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law," Policy Page 10, ¶ 1, and contends that if an insured is in another state or Canada and, as a nonresident, "becomes subject to its motor vehicle compulsory insurance," then "the policy will be interpreted to give the coverage required by the law" and "the coverage so given replaces any coverage of its policy to the extent required by the law[.]" However, this paragraph applies by its own terms only to "an insured under the liability coverage" (emphasis added), not to uninsured or underinsured coverage. This provision does not make the anti-stacking language ambiguous.
Next, he quotes a large portion of State Farm's policy, "Underinsured Motor Vehicle  Coverage W," Policy Pages 13-14, to contend that they are generally ambiguous: "It is hard to imagine a layman-insured having the understanding of the coverages provided under the UIM policy." We have closely examined this long passage of the policy and do not find that it causes any ambiguity. Coverage W establishes State Farm's obligation to pay underinsured losses; the "Other Underinsured" or anti-stacking provision merely creates an exclusion to coverage. This arrangement of general and special provisions does not make the contract ambiguous. Taylor v. Hinkle, supra; Dean v. Colonia Underwriters Ins. Co., supra.
Finally, Walker contends that to enforce the anti-stacking provision would contravene public policy. In support, he cites the dissent in Chamberlin v. State Farm, supra, and argues that because he paid a UM premium, however small, he had a reasonable expectation of coverage. We will readily concede the eloquence of Justice Thornton's dissent, but it was nevertheless only a dissent: it does not express the view of the court. We also recognize the apparent inequity of allowing State Farm to collect a premium for UM coverage and then withhold the benefit if other UM coverage is available. However, the policy bluntly sets a limit on total UM coverage "regardless of * * * premiums paid[.]" This court is without authority to rewrite a clear and unambiguous exclusion.
State Farm's position has merit. The district court erred in finding that State Farm had any further obligation of UM coverage. The judgment will be reversed.

Conclusion
Finding merit in State Farm's first assignment of error, we pretermit any considering of its second assignment, which addressed the application of Louisiana law. For the reasons expressed, the summary judgment in favor of Jerry Walker is reversed, and State Farm's opposing motion for summary judgment is granted. All costs are to be paid by Jerry Walker.
REVERSED AND RENDERED.
NOTES
[1] The remainder of the $50,000 policy was allocated between the other four occupants of the Impala, including Charles Cleveland.
[2] This is incorrect; to be precise, Walker obtained full payment from Cleveland's UM carrier and only a partial payment from the tortfeasor's liability carrier.