MOORE, J.
| ^Continental Casualty Company (“CNA”) seeks supervisory review of a judgment that denied its motion for summary judgment. For the reasons expressed, we grant the writ and make it peremptory.

Procedural Background

Dewayne Wright, an adult with Down Syndrome, came to the Willis-Knighton emergency room because of severe cramps on November 8, 1998. The emergency physician on duty, Dr. Ignatius Tedesco, evaluated him and admitted him to the hospital, where he later experienced a coma, insulin shock and CVA (stroke).
On November 5, 1999, Wright’s mother filed a complaint with the Patient Compensation Fund (“PCF”) naming Willis-Knighton as the healthcare provider; on November 2, 2000, she amended it to name Dr. Tedesco and a general surgeon, Dr. Rousseau. The PCF notified Dr. Tedesco | opf this action on November 15, 2000. In December 2001, a medical review panel found that Dr. Tedesco breached the standard of care by failing to verify the results of a urine test.
Acting through his mother, Wright filed the instant suit against Dr. Tedesco, Dr. Rousseau and a critical care physician, Dr. Raghu Nathan, on January 22, 2002; she amended her petition to join Willis-Knigh-ton as a defendant on October 31, 2002. In late 2008, the district court dismissed Willis-Knighton and Dr. Rousseau on exceptions of prescription (in the process, the court stated that Dr. Tedesco was an employee of Willis-Knighton). Wright amended the petition to join CNA, Dr. Tedesco’s medical malpractice insurer, on June 16, 2009.
CNA filed a motion for summary judgment, urging that its policy covering Dr. Tedesco was a claims-made policy insuring claims made between November 1, 1999, and November 1, 2000. It showed that Wright did not name Dr. Tedesco in her PCF complaint until November 2, 2000, a day after the claims-made period expired; hence, there was no coverage.
Wright opposed the motion. He argued that even though Willis-Knighton was not a named insured under the CNA policy, it was a solidary obligor and codefendant with Dr. Tedesco; ergo, the claim against Willis-Knighton, when made, was effective against Dr. Tedesco as well. In the |4alternative, he argued “relation back” under La. C.C.P. art. 1153, in that the join-der of Dr. Tedesco related back to the *385 original PCF complaint, which was within CNA’s claims-macle period.
The district court found genuine issues as to whether Willis-Knighton and Dr. Tedesco were solidary obligors and whether the claims-made policy would relate back to the initial complaint. It therefore denied the motion for summary judgment.
CNA took the instant application for supervisory review, which this court granted to docket on July 15, 2010.

Applicable Law

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Hill v. Shelter Mutual Ins. Co., 2005-1783 (La.7/10/06), 935 So.2d 691. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. jsThe interpretation of an insurance contract is usually a legal question that can be properly resolved by motion for summary judgment. Henry v. South Louisiana Sugars Coop., 2006-2764 (La.5/22/07), 957 So.2d 1275; Walker v. State Farm, 42,051 (La.App. 2 Cir. 4/4/07), 954 So.2d 847.
The major distinction between an “occurrence” policy and a “claims-made” policy lies in the difference between the perils insured. In the occurrence policy, the peril insured is the occurrence itself; once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. By contrast, in the claims-made policy, the making of the claim is the event and peril insured and, subject to policy language, regardless of when the occurrence took place. Hood v. Cotter, 2008-0215 (La.12/2/08), 5 So.3d 819, quoting Sol Kroll, “The Professional Liability Policy ‘Claims Made,’ ” 13 Forum 842, 843 (1978); Guthrie v. Louisiana Medical Mut. Ins. Co., 42,974 (La.App. 2 Cir. 2/13/08), 975 So.2d 804. The Louisiana Supreme Court has held that claims-made policies do not violate public policy. Anderson v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302; Livingston Parish School Bd. v. Fireman’s Fund, 282 So.2d 478 (La.1973). The supreme court has also held that claims-made policies do not violate the statutory time limit in which an insured may make a first-party cláim under La. R.S. 22:868. Hood v. Cotter, supra. In addition, this 1 fiCourt has' applied claim-made policies as written, even when claims period effectively shortens the legal prescriptive period. Guthrie v. Louisiana Medical Mut., supra.

Discussion

The CNA policy at issue identifies the named insux-ed as “Contracted Physicians of Willis Knighton Medical Center.” Dr. Tedesco is on the schedule of named insureds, with a prior acts date of Febraary 23, 1996; Willis-Knighton Medical Center itself, however, is not on the schedule. The declarations page contains this notice, printed in all capital letters:
YOUR PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A CLAIMS-MADE BASIS AND PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE THE RESULT OF MEDICAL INCIDENTS HAPPENING SUBSEQUENT TO THE PRIOR ACTS DATE STATED ON *386 THE DECLARATIONS AND WHICH ARE FIRST MADE AGAINST YOU WHILE THIS INSURANCE IS IN FORCE. NO COVERAGE EXISTS FOR THE CLAIMS FIRST MADE AGAINST “YOU” AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.
The alleged malpractice occurred after the prior acts date but the claim against Dr. Tedesco was made on November 2, 2000, after the end of the policy period, which expired on November 1, 2000. Plainly, there is no coverage “unless, and to the extent, an extended reporting period applies.”
17Wright argues that the CNA policy contains an extended reporting period (or “mini-tail”), appearing in Section V(A) of the policy (defined terms in boldface in the original):
V. EXTENDED REPORTING PERIOD COVERAGE
A. Termination
If this policy is terminated for any reason, you have the right to an Extended Reporting Period as follows:
1. Beginning on the termination date, the period of time allowed by the policy for the reporting of medical incidents, is extended for a period of 60 days, at no additional premium.
2. If you write to us within 60 days of the termination telling us that you want a further extension, and pay the premium to us promptly when due, * * * the period of time allowed by the policy for the reporting of medical incidents to us will be further extended in accordance with the rules, rates and rating plans in effect for us. * * *
Wright argues that this provision conferred on him an “automatic 60 day extended reporting period” as in Spurrell v. Ivey, 25,359 (La.App. 2 Cir. 1/25/94), 630 So.2d 1378, and the claim against Dr. Ted-esco clearly fell within the extra 60 days.
Analysis of this argument must begin with the policy’s definitions of “claim” and “extended reporting period”:
Claim means the receipt by you of a demand for money or services, naming you and alleging a medical incident.
Claim also means a medical incident which you report to us during the policy period which might result in a claim. ***
IsExtended Reporting Period means the time after the policy period for reporting claims due to a medical incident. The medical incident must happen on or after the prior acts date and before the end of the policy period.
The distinction is crucial. A claim occurs when you, “the person(s) or organization shown on the Declarations of this policy as the named insured,” receive a demand for money or services from a patient or plaintiff. By contrast, reporting occurs when the named insured conveys information about a potential claim to the insurer. The extended reporting period does not alter the policy period, a point reinforced by Section I’s coverage agreement: “The medical incident described above must happen on or after the prior acts date and claim therefor must be made before the end of the policy period stated on the Declarations of this policy.”
In light of these concepts, the passage in Section V(A) upon which Wright relies conferred upon Dr. Tedesco the right to an extended reporting period, but did not confer upon Wright an extended claims period. This distinguishes the case from Spurrell v. Ivey, supra, in which the policy *387 gave third-party claimants an additional 36 months to make claims.
The policy simply does not support Wright’s argument, which would require us to conflate the definitions of claim and reporting, and in effect [ gdisregard the policy period stated on the declarations page, the Section I coverage agreement and the definitions. This argument lacks merit.
Wright further argues that the policy contains a “relation back” clause as follows:
All claims whenever made, shall be considered first made during the policy period in which the earliest claim arising out of the same or related medical incident was made, and all such claims shall be subject to the same limit of liability. * * *
Wright contends that under this clause, his claim against Dr. Tedesco arose out of the same facts as his prior claim against Willis-Knighton, and hence should be considered first made when the first claim occurred.
This clause, however, must be read in context. It appears in the coverage part of the policy under Section III, “Limits of Liability,” and Subsec. B, “Aggregate.” After Section 111(A) defines the limit of liability, Section III(B) begins:
Subject to the provision A above, the total limit of our liability for all injury or damage shall not exceed the limit of liability stated as aggregate. The aggregate limit of liability applies to each policy period for all medical incidents for which claims are made.
Read together, these passages only establish a limit of liability for multiple claims arising out of the same incident; the reference to “All claims whenever made” is plainly a mechanism for unifying claims into the | inaggregate, not for extending the claims-made period. In short, the limitation of liability in Section III does not alter the claims-made period.
We find that Wright’s claim was made after the expiration of the claims-made period and that no extended reporting period applied.
As noted above, the district court denied the motion for summary judgment based on its perception of two genuine issues of material fact, whether Willis-Knighton and Dr. Tedesco were solidary obligors and whether the claims-made policy would relate back to the initial complaint. These questions, however, have no bearing on the issue of coverage under the CNA policy.
Section III(B) addresses the aggregation of claims for purposes of the policy limit, and does not provide for any relation back of untimely claims. Wright argues, however, that La. C.C.P. art. 1153 provides for the relation back of claims:
When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.
While Art. 1153 applies to pleadings in judicial proceedings, the events at issue in this case are not pleadings. Instead, they are Wright’s_|_yinitial PCF claim against Willis-Knighton, which is not an insured, on November 5, 1999, and his amended PCF claim adding Dr. Tedesco on November 2, 2000. Wright has cited no authority, and this court is aware of none, to hold that the relation back concept of Art. 1153 would apply to supersede the claims-made period of an insurance policy.
Finally, Wright argues that the prospect of solidary liability creates a genuine issue precluding summary judgment. In support, he cites the district court’s *388 earlier finding that Dr. Tedesco was an employee of Willis-Knighton; he also cites the statutory definition of a healthcare provider to include hospitals and “any officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.” La. R.S. 40:1299.41 A(10). He contends that his timely claim against Willis-Knighton included a claim against the hospital’s employees, including Dr. Tedesco, and hence the claim was timely.
This argument, while interesting, fails to override the fact that Willis-Knighton was not an insured under this CNA policy. Nothing in the policy extends coverage to a named insured based the filing of a claim against an entity that is not a named insured, even if that claim would have been timely if made against the named insured. Moreover, the importance of solidary liability is that the interruption of prescription against one solidary obligor is | ]2effective against all solidary obligors. La. C.C. arts. 1799, 3503. This case is not about prescription, but about whether Wright filed a claim against Dr. Tedesco during the policy period. The summary judgment evidence shows that he failed to do so, and that no extended reporting period or any other exception applied.
The district court committed legal error in denying the motion for summary judgment.

Conclusion

For the reasons expressed, we grant the writ and make it peremptory. The motion ■ for summary judgment in granted in favor of Continental Casualty Company. All costs are to be paid by the plaintiff.
WRIT GRANTED AND MADE PEREMPTORY.
GASKINS, J., Dissents with reasons.